2009 WY 44

**Robert Paul PARRIS, Appellant (Plaintiff),**

v.

**Jamie Sue PARRIS, Appellee (Defendant).**

Nos. S–08–0247, S–08–0248.

Supreme Court of Wyoming.

March 30, 2009.

Representing Appellant: Daniel E. White and Rhonda Sigrist Woodard of Woodard & White, P.C., Cheyenne, Wyoming.

Representing Appellee: Mary T. Parsons of Parsons & Cameron, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   The appellant (Father) appeals from the child custody provisions of a decree and a clarified decree entered in the parties' divorce action. We conclude that the district court abused its discretion in fashioning the custody award, and therefore reverse.

### ISSUE

[¶ 2]   Did the district court abuse its discretion in awarding primary legal custody and shared physical custody of the parties' minor child (Child) to the appellee (Mother)?

### FACTS

[¶ 3]   The parties were married in 1988. Child was born in 1998. In April 2006, Mother informed Father that she had been having an affair with TM, who "has a bad background but has cleaned himself up, that he is a felon and he used drugs." Shortly thereafter, Father filed a divorce complaint along with several pre-trial motions. The motions were resolved via a stipulated order which, in pertinent part, appointed a custody evaluator, and gave the parties temporary joint legal and physical custody of Child, with physical custody alternating on a weekly basis.

[¶ 4]   On January 12, 2007, Father filed a motion seeking modification of the temporary custody order on the ground that Mother and Child spent "substantial amounts of time" with TM, who recently "was found to be in possession of cocaine, drug paraphernalia, cutting agents, and a false urine sample...." Mother filed a response to Father's motion in which she admitted its primary averment, but claimed that she had severed all ties with TM and that neither she nor Child "will be spending any time around [TM] in the future." The district court entered an order on March 7, 2007, disposing of Father's motion in relevant part as follows:

> . . . .
>
> 2.   The parties agree that [TM] was arrested on December 22, 2006 for the unlawful possession of a controlled substance. [Mother] has, through her counsel, advised the Court that she has terminated all contact with [TM].
>
> 3.   Because of [Mother's] representation, the Court does not find it necessary at this time to conduct a separate evidentiary hearing on [Father's] motion for modification of temporary custody.
>
> 4.   In view of [TM's] present circumstances, [Mother] should be ordered not to permit any verbal, written or personal contact, of any kind, between [TM] ... and [Child].
>
> . . . .

IT IS THEREFORE ORDERED, AD-JUDGED AND DECREED:

1. That [Mother] shall be and she is hereby ordered not to permit any verbal, written, or personal contact of any kind between [TM] . . . and [Child].

. . . .

[¶ 5]  Mother's written pre-trial statement reiterated her decision to separate herself and Child from TM:

A long-term relationship with [TM] did look encouraging until I found out about his arrest and charges for possession of cocaine.  I still do not feel like I know all of the details and truth about the charges and why they were dismissed.  In any event, I have terminated all physical contact with [TM], and [Child] has not talked to or seen [TM] since January 12, 2007.  I do not consider [TM] a boyfriend any longer or even a potential boyfriend.  He has made a very big mistake, he was dishonest, and he has an addictive personality.  I have continued to talk to him on the phone however, as a friend; I find it difficult to abandon somebody in their biggest time of need.  And I did not consider or appreciate the fact that continuing to talk to him on the phone would jeopardize my chances of custody for [Child].  [Child] is the most important person in my life, and if it means I cannot talk to [TM] on the phone, then so be it.

[¶ 6]  The divorce trial covered four days in April 2007.  Mother testified repeatedly that she had no intention of resuming a relationship with TM, that her relationship with TM "terminated" when she learned about the "drug bust," and that it was not appropriate for Child to have further contact with TM.  In addition, the court-appointed custody evaluator, a clinical psychologist who specializes in child and family psychology, testified as follows:

Q.  In this particular instance, do you believe that it is appropriate in any way for [Mother] to continue a relationship with [TM]?

A.  No.

Q.  Why is that?

A.  Given the history that he has and the concerns that surround that history, drug use or the arrest, and the fact that he was arrested before, I think in January of this year, and it is acknowledged that he's got this problem, that he is not personally of good character to be around the child and given the child's perception that that's done with.  Maintaining that relationship I think is a very bad situation for her and for the child.

[¶ 7]  At the end of the trial, the district court delayed making a decision and asked both attorneys to submit proposed findings of fact and conclusions of law.  That was on April 19, 2007.  Both attorneys filed their submissions on June 12, 2007.  In the meantime, however, Father filed a motion seeking an order requiring Mother to show cause why she should not be held in contempt of court for allowing Child to have telephone contact with TM, and for resuming her relationship with TM.  In a responsive pleading, Mother admitted that she had dinner with TM and that Child had answered the telephone when TM called.  The motion was heard and denied on May 25, 2007, with the district court finding that Mother did not act willfully in allowing the telephone contact.

[¶ 8]  On September 27, 2007, the district court issued its decision letter.  In pertinent part, that decision letter provided as follows:

2.  After taking into consideration the factors contained in W.S. 20–2–201 with regard to **disposition of [Child]**, I will adopt the existing shared parenting schedule, that being a week with each parent.  I gave thought to extending the period that each parent spends with [Child] to two weeks, however, based upon the parents' preference to maintain the existing schedule and the difficulty the two week period would place upon [Father's] professional responsibilities I have concluded that it is in [Child's] best interest to ratify the existing schedule.  In the event one of the parties wishes to take a vacation with [Child] which exceeds one week, I will expect the other party to cooperate.  I have given great thought to the issue of designating a primary residential custodian.  It is clear that [Child] has a good

relationship with both of his parents. It is also clear that each parent has the ability to provide adequate care for [Child] and that each parent is a competent and fit parent. I am concerned about the propriety of the decisions [Mother] made with regard to [TM] and I am concerned about [Father's] ability and willingness to allow [Mother] to provide care for [Child] without intrusion. I am also doubtful that he would respect [Mother's] parental rights and responsibilities including the right to privacy. Although [Father] has somewhat recently demonstrated an admirable desire to spend more time with [Child], there is not much disagreement between the parties that while [Child] was younger [Mother] was the primary caregiver. It is commendable that [Father] has found ways to arrange his work schedule to expand the time he spends with [Child]. I believe by sharing parenting time [Child] will benefit from the attention and strengths of both parents. I believe that [Father's] structured thinking would operate to [Child's] disadvantage if he was designated as the primary residential custodian therefore, taking all of these factors into consideration, it will be the order of the Court that **[Mother] will be designated the primary residential custodian.** I am concerned that if [Father] is designated the primary residential custodian, he would seek ways to influence or control [Mother's] conduct and manner of handling [Child] which would create animosity and anxiety that would adversely affect [Child]. Although I suggested in my comments that the parties look at the idea of dividing the responsibilities of the primary residential custodian in retrospect I don't believe that is a good idea. I encourage the parties to continue their practice of exchanging notes and or emails regarding [Child's] welfare. Since parenting time with [Child] is divided equally, neither party may move [Child] from Laramie County, Wyoming without court approval. . . .

(Emphasis in original.) In addition to these general considerations, the district court also specifically rejected Father's proposed conclusion that "[Child] shall not be permitted to have contact or communication with [TM]. . . ."

[¶ 9] The record does not reflect why no decree was entered within a reasonable time after issuance of the decision letter. On March 13, 2008, Father filed a motion seeking the district court's reconsideration of its decision not to forbid contact between Child and TM. The gravamen of the motion was that Mother was pregnant and that, if TM was the unborn child's father, it was likely that Mother and TM would continue to have contact.

[¶ 10] While the motion for reconsideration was pending, Father filed a motion seeking an order requiring Mother to show cause why she should not be held in contempt of court for violating the March 7, 2007 order that forbade contact between Child and TM. This lengthy motion alleged recent contact between Child and TM, alleged that Mother and TM were considering marriage, and reminded the district court of the negative trial testimony about contact between Child and TM. On June 2, 2008, Father filed another, similar motion, this time alleging that TM had moved into Mother's residence. Two days later, Father filed yet another motion, this one seeking an emergency order suspending the shared custody arrangement due to TM's presence in Mother's residence.

[¶ 11] Mother responded to these motions on June 20, 2008, admitting that she was cohabiting with TM, and admitting that he was the father of her newborn child. Five days later, Father filed a motion seeking a new trial on the custody issue. Father supplemented that motion on July 29, 2008 with a copy of TM's criminal record. A second supplement on August 7, 2008 had attached to it a letter from Child's counselor detailing Child's difficulties with TM, and recommending that Father should have primary custody. Father's final motion for new trial reiterated the issue of contact between Child and TM, and noted that Child had placed a 911 call complaining about being left with TM.

[¶ 12] On August 13, 2008, the district court put an abrupt end to this post-trial wrangling by sending the following e-mail to counsel:

Folks: after too many months of deliberating I am going to issue the decree. I am going to deny all of the pending motions. I am uncomfortable revisiting the custody issue even though it appears there have been changes since the parties stipulated to the shared custody and perhaps even since the trial. Although it is possible [Mother] violated the order on temporary custody, the outcome of that motion could only be a finding of contempt and sanctions rather than a change in custody. The order on temporary custody will be subsumed by the decree. While it may not be apparent to you or your clients, I have spent many hours working and reworking the decree and reviewing the evidence submitted. I would hope the decree will be filed this week. I gave considerable thought to issuing a partial decree pertaining only to the property issues and conducting another hearing on custody, but I don't believe that would be appropriate under all of the circumstances even if it might be allowable under rules. In the event either party wishes to seek modification of the decree, I will be assigning this case to another judge....

As a result of these decisions, it will not be necessary to have the hearing this afternoon regarding Mr. Homar's testimony and the hearing scheduled for August 12th and those hearings are hereby vacated.

[¶ 13] A Judgment and Decree of Divorce was entered on October 9, 2008–18 months after the trial. The decree contained the following relevant findings of fact:

. . . .

3. It is in the child's best interest to ratify the parenting schedule existing at the time of the trial, that being one week with each parent. Prior to and subsequent to the trial [Father] became increasingly concerned about the association between [Child] and [TM]. [Father] repeatedly requested that the court hold [Mother] in contempt for violation of the temporary custody order in which the Court prohibited contact between [Child] and [TM]. [Father] also asked the Court to set a post-trial hearing at which the Court could receive additional evidence and modify the custody of [Child]. The Court finds that most of the events which caused [Father] such concern took place after the closure of evidence in this case, and therefore the resolution of such issues is more appropriately treated after the entry of a decree.

4. The Court is aware that shared custody is not favored by the Wyoming Supreme Court, however in this case, the parties voluntarily set up such an arrangement and the Court is simply ratifying an arrangement selected by the parties prior to the presentation of evidence to the Court. In addition, the Court finds that both parents have positive traits which would operate to the benefit of the child and shared custody will provide him with the maximum opportunity to benefit from such traits. Lastly such an arrangement was recommended by the child custody evaluator.

5. It is clear that the child has a good relationship with both of his parents.

6. It is clear that each parent has the ability to provide adequate care for the child and that each parent is a competent and fit parent.

7. [Mother] has been the primary caregiver for the child until shortly prior to the initiation of this matter, although the Court is favorably impressed that [Father], once this marriage began to disintegrate demonstrated a desire to spend substantial amounts of time with his child.

8. The Court has doubts about [Father's] ability and desire to respect [Mother's] judgment, parental rights and responsibilities, including the right to privacy and as a result the Court finds that he would not be an appropriate primary legal custodian.

9. If [Father] is designated the primary residential or legal custodian, he would seek ways to influence or control [Mother's] conduct and manner of handling the child, which would create animosity between the parents and anxiety that would adversely affect the child.

10. The parties should continue their practice of exchanging notes and or emails regarding the child's welfare.

11. [Mother] should be designated the primary legal custodian. The Court con-

siders that designation to mean that she is the one who will make decisions affecting the child's welfare in the event the parents are unable to agree on such decisions.

[¶ 14]   Based upon those findings, child custody was ordered as follows:

**Child Custody.**   [Mother] is hereby designated primary legal custodian.   The parties shall continue to share time, with the child residing with each parent on alternating weeks.   Although [Mother] is designated as the primary legal custodian giving her the authority to make all significant decisions affecting the parties' child, [Mother], prior to making those decisions shall consult with [Father] and in the event there is no agreement regarding such decisions, [Mother] shall have the ultimate decision making authority.   [Father] shall have the minor child beginning at 8:00 a.m. on each Friday which is an even-numbered date.   [Mother] shall have the minor child beginning at 8:00 a.m. on each Friday which is an odd-numbered date.   The holiday schedule shall be as set forth in Exhibit A, attached hereto, and incorporated herein by reference.   Should either party desire to take the child on a vacation which exceeds one week, then the parties may do so and shall cooperate in scheduling such a vacation and thirty (30) days' notice shall be given.

## STANDARD OF REVIEW

[¶ 15] We very recently reiterated our standard for reviewing the child custody determinations of a district court:

Child custody decisions are within the sound discretion of the trial court.

It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration.   The determination of the best interests of the child is a question for the trier of fact.   We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.   *Resor v. Resor,* 987 P.2d 146, 148 (Wyo.1999), quoting *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998).

*Testerman v. Testerman,* 2008 WY 112, ¶ 8, 193 P.3d 1141, 1144 (Wyo.2008).

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances.   Our review entails evaluation of the sufficiency of the evidence to support the district court's decision....   Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained.   Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Eickbush v. Eickbush,* 2007 WY 179, ¶ 9, 171 P.3d 509, 511 (Wyo.2007) (citations omitted).

*Buttle v. Buttle,* 2008 WY 135, ¶ 15, 196 P.3d 174, 178 (Wyo.2008).

## DISCUSSION

██   [¶ 16]   We will, perhaps, make shorter shrift of this debate than did the district court.   We must first point out that the issues have not been brought to us with much clarity.   Potential distinguishable issues appear to be:  (1) Did the district court abuse its discretion in reaching the custody decision set forth in its decision letter?;  (2) Did the district court abuse its discretion in entering the decree based upon the trial evidence?;  (3) Did the district court abuse its discretion in denying any or all of Father's post-trial motions?;  (4) When, if ever, may a district court consider matters that occurred after trial?;  (5) Are the child's best interests determined at the time of trial, or at the time that a decree is entered 18 months later?; and (6) What factors in this case support a shared custody arrangement?

██   [¶ 17]   The following analysis leads us to the conclusion that the child custody provisions in the decree and in the clarified decree must be reversed.   First, a decision letter does "not constitute a judicial determination which may be considered a final order."   *Broadhead v. Broadhead,* 737 P.2d 731, 733 (Wyo.1987).   Thus, the district court was free to revise its rulings prior to judgment, and could have heard the pre-judg-

ment motion to reconsider. *Steranko v. Dunks,* 2009 WY 9, ¶ 6, 199 P.3d 1096, 1096–97 (Wyo.2009); *Broadhead,* 737 P.2d at 733. Procedurally, both W.R.C.P. 59 and W.R.C.P. 60 provide methods, even after judgment, for re-opening the evidence or providing a new trial.

[¶ 18] Second, it was utterly obvious in the instant case that the circumstances that existed at the time of trial no longer existed at the time the decree was entered. In fact, the primary issue of concern—TM's contact with Mother and Child—was exactly the opposite of what Mother's trial testimony said it would be. Were this an extraneous matter, it might be overlooked. But we have made it clear that in child custody decisions, the best interests of the child are paramount. *Buttle,* 2008 WY 135, ¶ 15, 196 P.3d at 178. And in this case, everybody testified that it was not in Child's best interests to have contact with TM.

[¶ 19] Finally, we are concerned that, despite this Court's repeated admonition that shared custody is disfavored, and despite the lack of any evidence in this record that these two parents could ever make a success of shared custody, that is what the district court ordered. *See Buttle,* 2008 WY 135, ¶ 31, 196 P.3d at 181. To endorse a shared custody arrangement, this Court must be able to determine from the record "that a comprehensive evaluation of all relevant factors occurred prior to determining custody." *Id.* at ¶ 32, 196 P.3d at 181, citing *Pace v. Pace,* 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo.2001). That did not happen here, where shared custody was ordered largely on the ground that such had been the temporary agreement of the parents, and that both parents had good qualities. To the extent that the district court relied upon the opinion of the custody evaluator, it must be remembered that the custody evaluator believed TM was "out of the picture." He further opined that "[m]aintaining that relationship I think is a very bad situation for her and for the child." In other words, his opinion that Mother should have primary custody was only good so long as TM was not in the home. By the time the decree was entered, TM was in the home.

[¶ 20] Perhaps one needs to read the entire trial transcript to see why shared custody was such a bad idea in this case. Boiled down to its essence—and this is recognized in the district court's findings—the testimony revealed that the divorce resulted from Mother's eventual resistance to, and rejection of, Father's controlling personality. Disagreement permeated their relationship at the time of trial, especially insofar as Child was concerned. The testimony of counselors and teachers, not to mention evidence of the 911 call, showed that Child already was having difficulty being "shared." Most poignant was the custody evaluator's recitation of Child's most recent description of what he wanted:

He said when we talked, and especially toward the end, I think the last 15 minutes of the interview, I talked to him about an hour and two minutes, he said that what he wanted was more time with dad, less time with mom. And then more time with mom and less time with [D]ad. And that was his idea.

He thought it was good because he said a week was okay for him to transition, *but it is really hard because he has to change himself to fit into each home in all the ways he's supposed to be.*

So he said if he did it like every four days, it would be really hard because he couldn't do it. So he thought that if maybe he had two weeks in one home and then like a week in another home. He mentioned Monday, Tuesday, Wednesday, Thursday, and Friday he was reciting, trying to figure out in his mind. *Then he would have a long period where he wouldn't have to change. And he thought that was really good if he could just have that one house.*

(Emphasis added.)

## CONCLUSION

[¶ 21] The district court abused its discretion by entering a decree containing child custody provisions that were not in the best interests of the child. We reverse and remand for a new custody hearing, which we assume will be scheduled promptly, and at

which the current circumstances of the parties and the child shall be considered.