2007 WY 179

**Justin Dean EICKBUSH,
Appellant (Plaintiff),**

v.

**Lisa Ann EICKBUSH, Appellee
(Defendant).**

No. S–07–0030.

Supreme Court of Wyoming.

Nov. 9, 2007.

Representing Appellant: DaNece Day of Lubnau & Bailey, PC, Gillette, Wyoming.

Representing Appellee: No appearance.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   This appeal arises from the divorce proceeding of Appellant, Justin Dean Eickbush ("Father"), and Appellee, Lisa Ann Eickbush ("Mother").   In a pretrial conference, Father's attorney represented to the district court that the parties had reached an agreement on custody and that the parties would exercise shared custody, alternating weekly.   When the parties later were unable to agree on the terms of custody, Mother filed a motion to enforce the settlement agreement.   At a hearing, Mother insisted that their agreement should be enforced; however, Father contended that shared custody was not in the children's best interests and he should be awarded primary custody. The court enforced the agreement and ordered shared custody.   Father appeals from that order.   For reasons set forth below, we will reverse and remand for a custody hearing.

## ISSUE

[¶ 2]   The dispositive issue here is whether the district court abused its discretion in granting Mother's motion to enforce the settlement agreement and ordering shared custody.

## FACTS

[¶ 3]   Father filed a complaint for divorce on October 27, 2003.   After the divorce was initiated, Mother and Father decided to attempt to repair the marriage and determined that the best way to do so was to finalize the divorce and remarry, hoping for a fresh start.   On October 7, 2004, they filed a stipulated motion to bifurcate the proceedings requesting the district court enter a divorce decree, but allowing them six months to work out their marital issues and remarry.   On October 13, 2004, a decree of divorce was entered without addressing issues of custody, visitation, property or debt, and allowing the parties six months to remarry.

[¶ 4]   The attempt at repair and reunification was unsuccessful, and on January 10, 2006, Father filed a motion for temporary custody, support, and temporary possession of the residence.   A trial was set for November 20, 2006.   A scheduling conference was held on March 28, 2006.   We are not provided with a transcript of that proceeding; however, the record indicates that Father's attorney represented to the district court that the parties had agreed to shared custody, with the parenting time split equally.   Following the scheduling conference, a series of communications occurred aimed at formalizing that agreement, and the parties exchanged proposed orders reflecting their understanding of the agreement.

[¶ 5]   The parties were unable to reach an agreement, and on July 13, 2006, Father requested that the setting be amended to allow eight hours for trial (instead of the four previously agreed upon), stating that he "did not believe the issue of custody is agreed upon as was earlier reported to the Court at

a scheduling conference give (sic) the course of dealing between the parties since that time." The trial was rescheduled for one full day. On October 11, 2006, Mother filed a motion to enforce the agreement, asserting that the parties had agreed to joint legal custody with physical custody alternating weekly. In his response to Mother's motion, Father asserted that he should be awarded primary physical custody and contended that the family therapist would testify that the week-on, week-off custodial arrangement was not in the children's best interests.

[¶ 6] On November 20, 2006, the district court held a hearing to address Mother's motion to enforce, as well as all other outstanding issues regarding the division of the marital estate. Although the family therapist had been issued a subpoena to testify at the hearing, only Mother and Father provided testimony regarding their respective positions. At the close of the hearing, the district court took the matter under advisement.

[¶ 7] On December 6, 2006, the district court issued an order awarding joint legal custody and shared physical custody, alternating weekly. Although the order roughly defined the week-on, week-off custody schedule, it contained no specific findings regarding the disputed question of whether this arrangement was in the children's best interests.

[¶ 8] Father filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶ 9] In this appeal, Father challenges the district court's shared custody order. The standard of review utilized when reviewing a district court's custody determination is well established:

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo.1997); *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo*, 907 P.2d 348, 352 (Wyo.1995). It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. *Scherer,*

931 P.2d at 254; *Rowan v. Rowan*, 786 P.2d 886, 890 (Wyo.1990); *see also Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995); and *Fink v. Fink*, 685 P.2d 34, 36 (Wyo. 1984). The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink,* 685 P.2d at 36.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo.1995) (*quoting Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo.1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs,* 920 P.2d at 657; *Cranston v. Cranston,* 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present "'when a material factor deserving significant weight is ignored.'" *Triggs,* 920 P.2d at 657 (*quoting Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo.1993)).

*Pahl v. Pahl*, 2004 WY 40, ¶ 6, 87 P.3d 1250, 1252 (Wyo.2004) (quoting *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998)).

## DISCUSSION

[¶ 10] Even when parties agree on the issue of custody, "[i]t is well settled that the district court is not bound to accept a stipulation of the parties and that the court's major consideration in determining custody of minor children is the welfare of those children." *Forbes v. Forbes*, 672 P.2d, 428, 429 (Wyo.1983); *see also Fink v. Fink,* 685 P.2d 34, 36 (Wyo.1984). In fact, "[c]ourts have a duty to disregard, if necessary, agreements entered into by parents and to make provision for the proper support and care of

minor children according to their best interests." *Grosz v. Grosz*, 506 P.2d 46, 48 (Wyo. 1973). This obligation arises because although the settlement agreement significantly impacts the children, they are not parties to the contract nor are they typically represented in the negotiation thereof. *Id.* Finally, the district court must consider the interest of the children at the time of the hearing, not at the time the parties separated or some other time prior to the hearing. *Morris v. Jackson*, 66 Wyo. 369, 212 P.2d 78, 82 (1949).

[¶ 11] We have repeatedly said that divided or shared custody is not favored by this Court absent good reason therefore. *Martin v. Martin*, 798 P.2d 321, 322 (Wyo. 1990); *Feaster v. Feaster*, 721 P.2d 1095, 1098 (Wyo.1986); *Fink*, 685 P.2d at 36 n. 1; *Forbes*, 672 P.2d at 430; *Ayling v. Ayling*, 661 P.2d 1054, 1055 n. 3 (Wyo.1983).

There are several reasons for our reluctance to embrace the concept, but first and foremost is the recognition that stability in a child's environment is of utmost importance to the child's well-being, and divided custody places the stability of a child's environment at risk. Whether termed "divided," "shared," or "joint" physical custody, "a measure of instability is inherent" in the arrangement. *Gurney* [*v. Gurney* ], 899 P.2d [52,] 55 [ (Wyo.1995) ]. We do not dispute that there may be cases where joint or shared physical custody may approximate the former family relationships more closely than other custodial arrangements, or for other good reason may be in the best interests of the children. However, divided physical custody may not be indiscriminately substituted for an award of sole custody to one parent in order to appease one party.

*Reavis v. Reavis*, 955 P.2d 428, 432 (Wyo. 1998).

[¶ 12] In the present case, we must evaluate whether, based on the record before us, the district court abused its discretion in ordering shared custody. Essentially, we must determine whether the award of shared custody is contrary to the evidence, or whether the district court's "best interest" determination was factually supported. Unfortunately, the district court's order contained no specific findings concerning the factors it considered in deciding to award shared custody. Therefore, the hearing transcript provides the only record evidence of the district court's reasons for awarding shared custody. After the parties had presented their respective arguments on custody, the district court made the following statements:

From the evidence that has been adduced, the Court concludes there was an agreement, and the Court is going to enforce that agreement, and the agreement was for joint custody with physical custody week on and week off, and from a legal standpoint that it was joint custody.

Now, the question becomes whether or not that is in the best interests of the children, because the Court doesn't have to enforce their agreements if the Court concludes that it isn't in the best interests of the children. The Court cannot discern from the evidence that has been presented that it is not in the best interests of the children.

These problems that your son is having, unfortunately, your kids are going to have or not have problems irrespective of what this decree says. In their little minds, they don't read these things. And so it is really important, no matter what happens here today, that you have a successful divorce in as far as the kids are concerned, and work together.

[¶ 13] Although the evidence presented at the hearing was sparse with respect to the effect the shared custody arrangement was having, or might have on the children, both parents did provide testimony on that issue. Father and Mother both acknowledged that the family therapist had suggested that the shared custody arrangement was difficult for the children. On cross-examination, Mother stated:

Q. Your children counsel with Susan Wrightburn?

A. Uh-huh.

Q. And have been for several months?

A. Uh-huh.

Q. During that time has she talked to you about the problems your children are having?

A. As well as I have.

Q. And she has talked to you about the frustration that [the oldest child] feels because of the bouncing back and forth between the homes, hasn't she?

A. A little.

Q. So then to say that it is working for your children isn't true, is it?

A. I guess I know what is best for my children. I believe that it has worked. During that same conversation she has also congratulated [Father] and I in what a difference the kids have been doing since they first started, so that does lead me to believe that what we are doing is working for the kids.

Similarly, Father testified as follows:

Q. As part of your children's therapy with Susan Wrightburn[ ] are you aware that [your oldest child] is having problems with the week on week off situation.

A. Yes, I am.

Q. And has that been discussed with both you and Lisa with the children's counselor?

A. Yes.

Q. How does that factor into your feelings about a shared custody arrangement?

A. That is my primary concern because it—if what we are doing isn't working for the kids, we need to do something that actually works for them that is healthy for them.

Father also outlined specific difficulties the parties' oldest child was having with the shared custody arrangement stating:

He is angry. He doesn't understand why he needs to go back and forth. [He] is angry because he is unable to sleep at [Mother's] residence because of the people upstairs and loud music. He has made mention of that numerous (sic), that he is unable to sleep because of the loud music of whoever is in the apartment up above

them. He doesn't have—he is really confused on, when he goes from one house to the next, that why he can get away with stuff at her house, that he can't get away with stuff in my house, and I imagine it is probably—I mean that same goes true when he goes to her house, that, you know, that there isn't the consistency there that was there when we were married.

[¶ 14] As noted above, shared custody is disfavored absent good reason therefore. *See supra* at ¶ 11. While there are circumstances where such an arrangement may be appropriate, the record does not demonstrate that this is such a case. Rather, here the facts would seem to point away from shared custody. We have said that "[t]he success of a joint or shared custody arrangement hinges on the extent to which the parents are able to communicate and agree on the matters relevant to the children's welfare." *Reavis*, 955 P.2d at 433. Not only did the parents disagree as to whether shared custody was in the children's best interests, but the record indicates they had different parenting styles and philosophies.

[¶ 15] Furthermore, the record indicates that the children were having difficulties with the shared custody arrangement. Although the district court acknowledged the problems the children were having, it concluded that the difficulties would exist regardless of what form of custody was ordered. *See supra* at ¶ 12. This conclusion is unsupported by the evidence presented at the hearing and inconsistent with undisputed[1] evidence that the children (particularly the oldest) were having problems with the week-on, week-off schedule.

■ [¶ 16] Not only was the district court's justification for awarding shared custody inconsistent with the evidence presented, but the record indicates that the district court was not even possessed of sufficient evidence to allow it adequately to address the disputed question of custody. After hearing the testimony of the parties, the district court stated it was unable to "discern from the evidence that has been presented that

---

1. While Mother acknowledged the concerns of the children's counselor regarding the shared custody arrangement, she presented no evidence refuting those concerns. Likewise, Mother did not dispute Father's report of the difficulties the

oldest child was experiencing with the week-on, week-off arrangement, but rather indicated that Father had not informed her of his concerns and emphasized that the settlement agreement should be enforced.

[shared custody] is not in the best interest of the children." This conclusion regarding the paramount issue of best interests is simply inadequate—especially when the court is contemplating ordering a disfavored form of custody. In performing a best interests analysis, the district court must satisfy itself that it is possessed of sufficient facts to support its determination. *Martin,* 798 P.2d at 323 ("[t]he test for child custody is the best interests of the children, and such a decision cannot be made without the district court having before it all facts necessary to make such a determination"). The district court never stated that the shared custody arrangement most closely approximated the former familial relationship or found that there was good reason to order shared custody. In fact, the district court never even affirmatively stated that shared custody *was* in the children's best interest. Instead, it concluded that it did not have enough evidence to decide that shared custody *was not* in the children's best interest. In short, the district court failed to ensure that the children's best interests were protected when it ordered shared custody without having all of the facts necessary, accurately, and fully to evaluate the impact that shared custody might have on the children.

## CONCLUSION

[¶ 17] Both parents acknowledged at the custody hearing that the family therapist had expressed some concern about the impact the shared custody arrangement was having on the children. Also, Father testified that the parties' oldest child was struggling with this arrangement. Although the district court acknowledged these problems, it found that the children would have these problems no matter what form of custody was ordered. This conclusion is unsupported in the record and inconsistent with the evidence presented. Furthermore, the court abused its discretion by ordering shared custody without having sufficient facts adequately to evaluate whether this disfavored form of custody was in the children's best interests.

[¶ 18] Reversed and remanded.