2010 WY 114

**JS, Appellant (Petitioner),**

v.

**MB, Appellee (Respondent).**

No. S–09–0200.

Supreme Court of Wyoming.

Aug. 10, 2010.

Representing Appellant: Donna Sheen, Cheyenne, WY.

Representing Appellee: Richard L. Harden, Casper, WY.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

* Chief Justice at time of expedited conference.

HILL, Justice.

[¶1] Appellant, JS ("Father"), challenges the district court's order requiring the parties to exchange child visitation on a weekly basis when the child reaches age five in 2013. We affirm the district court.

## ISSUE

[¶2] Father lists one issue:

Was the district court's *Order Regarding Custody, Visitation, and Support* ordering the parties to alternate weeks with the child beginning at age 5, an abuse of discretion that does not serve the child's best interests?

## FACTS

[¶3] In 2007, Appellee, MB ("Mother"), and Father were involved in a relationship and conceived a child. During Mother's pregnancy, the relationship ended. The parties' son was born in 2008. On August 12, 2008, Father filed an action to establish paternity and sought custody of his son.

[¶4] A two-day trial was held, the first day on March 12, 2009, and the second on May 22, 2009. After the first day, the court entered an order establishing paternity and giving temporary custody to Mother. After the second day, the court awarded Father "primary legal and physical custody" of the parties' son. Mother was awarded visitation, which begins every Saturday at 9 a.m. and ends on Tuesdays at 6 p.m. The order provided that, "[w]hen the child attains 5 years of age, the mother and father shall alternate weeks with the mother and father exchanging the child on Sundays at 5:00 p.m." Father appealed, challenging only this provision of the order.

## STANDARD OF REVIEW

[1–7] [¶5] We review a district court's custody determination according to the following standards:

Child custody decisions are within the sound discretion of the trial court. . . .

It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.

*Resor v. Resor,* 987 P.2d 146, 148 (Wyo. 1999), quoting *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998).

*Testerman v. Testerman,* 2008 WY 112, ¶8, 193 P.3d 1141, 1144 (Wyo.2008).

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision. . . . Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' "

*Eickbush v. Eickbush,* 2007 WY 179, ¶9, 171 P.3d 509, 511 (Wyo.2007) (citations omitted).

## DISCUSSION

[¶6] In his only issue, Father argues that the district court abused its discretion by ordering what amounts to shared custody, although each party sought primary custody.[1] Father complains that the district court erred in ordering the arrangement, which is to take place in 2013, without a separate hearing to determine the child's best interests at that time. Father also submits that because of their inability to communicate, the parties have not demonstrated the ability to succeed in a shared custody arrangement.

[¶7] In response, Mother contends that there was no abuse of discretion and disagrees that this is a shared custody case because Father was awarded primary legal and physical custody. Mother asserts that the district court provided detailed findings and reasoning for its decision—for instance,

1. Father actually was awarded primary legal and physical custody.

that Mother was the primary caregiver throughout the child's life, the age of the child, the fact that the child has a half-brother, and the fact that in 2013, the child will be school-aged. Mother also argues that the parties' inability to communicate is accounted for by the order of structured visitation.

[¶ 8] Although Father does technically hold primary custody of the parties' child, the schedule set by the district court does amount to sharing the time of the child almost equally.[2] The visitation awarded to Mother is indeed liberal. There is statutory discretion for a district court to order visitation, "in enough detail to promote understanding and compliance," as "it deems in the best interests of each child." Wyo. Stat. Ann. § 20-2-202(a)(i) (LexisNexis 2009).

[¶ 9] In this case, as per the court order, the sharing is of visitation, not of custody. Undeniably, however, the parties must operate in terms of visitation as they might if the court had ordered shared custody. In *Buttle v. Buttle*, 2008 WY 135, 196 P.3d 174 (Wyo. 2008) we restated our shared custody precedent:

> We have repeatedly said that divided or shared custody is not favored by this Court absent good reason therefore." *Eickbush*, ¶ 11, 171 P.3d at 512. We have explained that "stability in a child's environment is of utmost importance to the child's well-being," *Reavis*, 955 P.2d at 432, while "a measure of instability is inherent" in joint custody arrangements. [*Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995)]. We have emphasized that the "success of a joint or shared custody arrangement hinges on the extent to which the parents are able to communicate and agree on the matters relevant to the children's welfare. *Reavis*, 955 P.2d at 433.

*Id.* ¶ 31, 196 P.3d at 181–184.

[¶ 10] When a district court's exercise of discretion in custody matters involves splitting custody of children between parents or other unconventional custody approaches,

such as liberal visitation that amounts to equally splitting the child's time, we have said that it must provide an explanation of its reasoning and place its findings on the record so that, upon review, this Court can be certain that a comprehensive evaluation of all relevant factors occurred prior to determining custody. *Pace v. Pace*, 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo.2001). In this case, the district court found as follows:

4(a). Regarding the quality of the relationship the child has with each parent: the Court finds that the minor child has a good relationship with his mother. The relationship with the father has been limited, not because of the father's unwillingness or inability but simply a lack of access to the child. . . .

4(b). Regarding the ability of each parent to provide adequate care for the child throughout each period of responsibility, including arranging for the child's care by others as needed, it would appear both parents are able to provide adequate care for the child throughout the period of responsibility and arrange for the care by others as needed. There is some concern as to some of the choices that the mother has made in terms of individuals that have cared for the child at times.

4(c). Regarding the relative competency and fitness of each parent, both parents appear competent and fit.

4(d). Regarding each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for the child at specified times and to relinquish care of the minor child to the other parent at specified times, it would appear that the father has accepted responsibility at all times he has been able to care for the child. The mother, for the most part, has accepted responsibility for parenting, but there have been times when, she is engaged in her own activities to the detriment of the child. As to the component to relinquish care to the other parent at specified times, mother was re-

---

**2.** Mother gets child from Saturdays at 9 a.m. to Tuesdays at 6 p.m. Father gets child from Tuesdays at 6 p.m. to Saturdays at 9 a.m. Each parent takes half of every week. When the child attains five years of age, the parents will switch weeks, exchanging the child at 5 p.m. every Sunday.

sist[ant] to and unwilling to allow the father to provide care for the child. Based upon the cumulative testimony, there was some control and some reluctance to allow the father to be a father to this child by the mother. It is in the best interests of the child to have a relationship with both parents. . . .

4(e). Regarding how the parents and each child can best maintain and strengthen a relationship with each other, the child can best maintain and strengthen a relationship with each parent by spending as much time as appropriate and in the best interest of the child to have that time with the child.

4(f). Regarding how the parents and child interact and communicate with each other, and how such interaction and communication can be improved, this Court ordered structured visitation and the evidence is that the parties were able to communicate with each other in doing that. However, in looking at how the parties operate outside this Court's orders, it appears that some of the communications that the mother has engaged in were troubling and less than mature individuals engaging in the terms of communications. For the most part, there's been some communication and some lack of communication as to doctor's appointments. The mother, at times, did not communicate with the father as to those visits and treatment of the child and to a certain extent did not want the father to know some of the circumstances regarding the child. This weighs slightly in favor of the father.

4(g). Regarding the ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy; with the exception of one visit with the child, the mother has not been very willing to allow the father to provide care without intrusion. There were some actions by the father that showed he was persistent in terms of reviewing and seeing what was going on with the child but, to a certain extent, that was attributable to the lack of communication by the mother and the lack

of her giving the father access to the child. This weighs slightly in favor of the father.

4(h). Regarding the geographic distance between the parents' residences; both parents reside in the Casper [area] so this is not at issue at this time.

4(i). Regarding the current physical and mental ability of each parent to care for the child; there is no indication as to any current physical or mental inability of either parent or limitation or other physical or mental ability.

4(j). Regarding other factors the Court deems necessary and relevant; the Court considered the structure and the support this child has in terms of other family members and their involvement. The gravest concern in determining the custody and the placement included the people mother has chosen to associate with. In determining the primary physical and legal custody the Court considered which parent would allow the other parent to have an opportunity to be involved with this child and respect that right and avoid using this child as a pawn in their scheme.

[¶ 11]   Our assessment of the order is that it explains the district court's reasoning behind the custody arrangement in full. The record also reflects the court's analysis. Along with the district court's explanation of its ruling, this Court has also said that another important factor for our consideration "is the extent to which the parents are able to communicate and work together to promote the child's best interest." *Buttle*, ¶ 39, 196 P.3d at 183. In our view, this is the primary concern in this case. The parties clearly have a history of a tenuous relationship. Although there is nothing in the record to reflect a pattern of violence or abuse, we have stated the importance of general amiability among parents:

> The premise of the joint custody order is the parents' ability to resolve between themselves the custodial details. There can be little question that joint custody requires sincere dedication on the part of each parent to safeguard the security and stability vital to a child's best interest. When the parents are unable to make this cooperative arrangement work, a change of

circumstances justifying judicial reexamination of the original joint custody order is demonstrated.

*Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo. 1995).

[¶ 12] Father points to *Buttle* in support of his argument. In *Buttle*, the parties admitted they were unable to get along and physically "fought." This Court determined that the parties had no history of effective communication or cooperative decision making, and that shared custody was inappropriate when the parties have demonstrated an inability to communicate.

[¶ 13] As noted, these parties do have a history of struggle within their relationship. Mother testified that she did not think Father was capable of caring for the child. Furthermore, Mother tried to control Father's access to the child by requiring that he exercise visitation only under her supervision. Mother also claimed that overnight visitation was unavailable because of the child being breastfed. However, in our view, this case is different than *Buttle*, in that Father has and will retain full primary physical and legal custody of the child, placing all primary decision-making authority regarding the child's health and well-being with Father. This significantly reduces opportunities to disagree. Significantly, Father is only appealing the portion of the custody arrangement that takes effect when the child attains the age of five in 2013. The custody arrangement from now until 2013 and beyond, remains the same, with each party getting the child approximately half of the time. The only thing the parents must agree upon is to exchange the child at the court-ordered times. Some degree of communication and cooperation will be necessary in that endeavor.

[¶ 14] Furthermore, the district court in this case, unlike *Buttle*, provided sufficient findings in its order to justify the custody arrangement, not the least of which is that the child has a half-brother on Mother's side. This Court is strongly in favor of preserving sibling relationships, whether they are full sibling, half sibling, or step siblings. *Aragon v. Aragon*, 2005 WY 5, ¶ 26, 104 P.3d 756, 764 (Wyo.2005).

[¶ 15] The district court did not abuse its discretion in ordering the parties to alternate weeks with the child beginning at age five. In ordering as it did, the court simply modified the current visitation arrangement to accommodate the growing child, which is routinely done in long-term custody and visitation plans.

[¶ 16] We affirm the district court's *Order Regarding Custody, Visitation, and Support,* and conclude that there was no abuse of discretion by the district court in ordering the visitation modification in 2013.

KITE, Chief Justice, specially concurring.

[¶ 17] While I concur in the majority opinion and its reasoning, I write separately to point out that our jurisprudence provides divided custody is not favored and should not be imposed simply because both parents are equally qualified to be awarded custody.

[¶ 18] We have repeatedly stated that divided custody is not favored by this Court. *Martin v. Martin*, 798 P.2d 321, 322 (Wyo. 1990); *Feaster v. Feaster*, 721 P.2d 1095, 1098 (Wyo.1986); *Fink v. Fink*, 685 P.2d 34, 36 n. 1 (Wyo.1984); *Forbes v. Forbes*, 672 P.2d 428, 430 (Wyo.1983); *Ayling v. Ayling*, 661 P.2d 1054, 1055 n. 3 (Wyo.1983). There are several reasons for our reluctance to embrace the concept, but first and foremost is the recognition that stability in a child's environment is of utmost importance to the child's well-being, and divided custody places the stability of a child's environment at risk. Whether termed "divided," "shared," or "joint" physical custody, "a measure of instability is inherent" in the arrangement. *Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995). We do not dispute that there may be cases where joint or shared physical custody may approximate the former family relationships more closely than other custodial arrangements, or for other good reason may be in the best interests of the children. However, "divided physical custody may not be indiscriminately substituted for an award of sole custody to one parent in order to appease one party." *Reavis v. Reavis*, 955 P.2d 428, 432 (Wyo.1998).

[¶ 19]  In this case, it appears that the district court had concerns about the mother's ability to communicate with and be supportive of the father as a co-parent.  While the district court provided findings that are detailed and thorough and address all of the statutory criteria, it did not explain why divided custody was required in this situation other than a child benefits from having a strong relationship with both parents.  That is true in all cases.

[¶ 20]  I concur in the majority opinion because our standard of review allows reversal only if the district court abused its discretion and the district court obviously made an effort to consider all appropriate factors and to articulate its reasoning.  However, I do not believe this case should be relied upon as indicating a deviation from our long line of cases disfavoring divided custody and requiring exceptional circumstances.