FOX, Justice.
*59 [¶1] Heather Martin (Mother) and Christopher Hart (Father) had a brief romantic relationship, which ended before their child was born. Father filed a Petition to Establish Paternity, Custody, Visitation, and Support. The district court awarded primary physical custody to Mother, with a visitation schedule that requires extensive travel between Mother's residence in Glenrock, Wyoming, and Father's residence in Mesa, Arizona, until the child reaches school-age, at which time the parties must agree on a new visitation schedule or seek modification from the district court. The order also requires Father to pay child support below the presumptive statutory amount. Mother appeals the district court's visitation schedule and its child support determination. We reverse and remand.
ISSUES
[¶2] The parties raise three issues on appeal, which we rephrase:
1. Did Mother appeal an order over which this Court has jurisdiction?
2. Did the district court abuse its discretion when it imposed a graduated visitation plan requiring extensive travel that does not specify how visitation will work when the child starts kindergarten?
3. Did the district court abuse its discretion in establishing Father's child support obligation?
FACTS
[¶3] Father and Mother met in Casper, Wyoming, during the summer of 2015, and began a romantic relationship. That fall, Mother and Father broke up, and Mother learned she was pregnant. Initially Father and Mother communicated about the pregnancy, but in early 2016, Mother changed her phone number and blocked Father on social media "so that he could not reach [her] anymore[.]" Meanwhile, Father moved to Mesa, Arizona, to accept a job. In March, Father filed a Petition to Establish Paternity, Custody, Visitation, and Support in district court.
[¶4] Mother gave birth to a son, LH, in June 2016. Father learned of the birth two days later from his mother, who had seen pictures of the baby on Facebook. Father travelled from Arizona to Wyoming to visit LH in July. He visited again in September, but Mother "kicked [him] out of the house" because he was taking photos after she had asked him not to. In November, Father and Mother entered into a Stipulated Temporary Agreement Establishing Paternity, Child Custody, Visitation and Support that established Father as LH's biological father, awarded Mother primary physical custody, established monthly visitation for Father, and required Father to pay child support of $646.78 per month during the pendency of the case. However, due to scheduling conflicts between Mother and Father and the expense of travelling from Arizona to Wyoming, Father missed monthly visitation in December 2016[1] and in January, March, May, June, and July 2017. When he did visit, Father did not spend time alone with LH and never had him overnight.
[¶5] Mother quit working before LH's birth and did not seek new employment. While she was pregnant with LH, she and her older daughter lived with her mother and then a friend, without paying rent. She and her children then lived with her grandmother, again without paying rent. In 2017, she and her children moved in with her boyfriend, who pays for rent and utilities and bought her a car. Mother receives government assistance via food stamps and Medicaid.
[¶6] At the hearing on Father's petition, Father testified that he lives in Mesa, Arizona, with his fiancée and their infant son, where he works at an engineering firm. He also testified that he secured a spot for LH at a daycare center in Arizona, took parenting classes, and has a good relationship with LH, but has been prevented from spending more time with him because it was difficult to set up visitation with Mother and because he could not afford the approximately $1,500 *60 cost of each visit. Father's mother testified that he is a good father to LH and his other son. His fiancée testified similarly, but added that visitation with LH "never goes smoothly" because "[e]very time he tries to get visitation it's never what he asks for."
[¶7] Father also testified that he could not pay both the cost of his monthly child support and travel costs to visit LH, but that Mother had told him not to worry about child support. Father requested that child support be reduced from the statutorily presumed amount to $300 per month so he could afford transportation costs to visit LH, and expenses for his other son. Father also asked for primary physical custody of LH or, failing that, either three-month rotations between his residence and Mother's or divided school year and summer visitation with alternating holidays.
[¶8] Witnesses for Mother testified that she is a good parent to both of her children and has a strong support system in the Casper area. Mother testified that she facilitates a relationship between LH and Father's parents and that, even though she and Father do not always communicate well, she wants Father and LH to develop a father-son bond. However, she was not yet comfortable with overnight visitation because Father and LH had not spent enough time together. Mother also requested primary physical custody with a graduated visitation plan for Father, with LH to begin travelling to Arizona overnight at age four.
[¶9] Applying the factors in Wyo. Stat. Ann. § 20-2-201(a), the district court found:
(i). The quality of the relationship each child has with each parent. The Court finds that the parties are equal in this regard. The testimony is that both of them have positive relationships with the child.
(ii). The ability of each parent to provide adequate care for the child throughout each period of responsibility, including arranging for the child's care by others as needed. There was testimony that [Mother] is a stay-at-home mom, and [Father] has arranged for childcare for the minor. There was also testimony that [Mother] is completely dependent on her boyfriend for all means of support except for the public assistance that she receives while living with him. So the Court finds that to be a neutral factor between the parties.
(iii). Regarding the relative competency and fitness of each parent, the Court finds that the parties are equal. They both appear competent, fit and able to care for the child.
(iv). The parents' willingness to accept all the responsibilities, including a willingness to accept care at specified times and to relinquish care to the other parent at specified times. The Court finds that [Mother] has unreasonably restricted visitation for [Father], has unreasonably restricted contact between [Father] and the child and has generally been somewhat inflexible. This factor favors [Father].
....
(viii). The geographic distance between the residences of the parties. [Mother] lives in Glenrock, and [Father] has relocated to Mesa. That is a distance that requires significant hours to drive and a fairly significant flight [ ] between the two locations, which is a consideration for this Court.
(ix). The current physical and mental ability of each parent to care for the child. The parties are equal with regard to that factor.
(x). Any other factors that the Court deems necessary and relevant. That factor would be that the child is almost two (2) and has lived the majority of his life with [Mother] and her significant other. Given the child's age, the Court finds that factor favors [Mother], only because [Father] had to relocate to take a job.
[¶10] The district court determined it in the best interests of LH to award legal and physical custody to Mother, subject to Father's reasonable visitation. It ordered a graduated visitation plan, under which Father has seven consecutive days of monthly visitation until LH turns two, ten consecutive days of monthly visitation from age two to three, and fourteen consecutive days of monthly visitation from age three to five. The order awarded Father summer visitation for three consecutive weeks in 2018, four consecutive *61 weeks in 2019, six consecutive weeks in 2020, and eight consecutive weeks from 2021 on. It also established a holiday visitation schedule under which the parties were to alternate spring break and holidays, except Mother's and Father's days. It provided that "[a]ll holiday visitation shall supersede monthly visitation," and ordered Father to choose the dates for monthly visitation in odd-numbered years and Mother in even-numbered years. Finally, the district court ordered that "[o]nce the child starts kindergarten, if the parties cannot agree as to a monthly visitation schedule, they shall seek a modification of custody and/or visitation from the Court."
[¶11] The district court gave the parties several options for travel methods and cost allocation. Both parties can drive, bearing their own fuel and mileage costs, and meet halfway to exchange LH. Father can choose to fly to Casper to pick up LH and fly with LH back to Phoenix, Arizona, at his cost. If Father chooses this option, Mother must fly to Phoenix at the end of the visit to pick up LH and return to Casper with him, bearing the cost of these flights. Father can also choose to fly into Denver and have Mother meet him there to drop off LH. Again, Mother must fly to Phoenix at the end of the visit to pick up LH, and she must bear the cost of the drive to and from Denver and the flights into and out of Phoenix. Finally, Father can drive to Wyoming for visitation, and Mother must pay mileage for his return trip to Arizona. Under the order, Father chooses where visitation occurs and which travel method they use.
[¶12] Without stating the presumptive child support amount on the record, the district court deviated downward from statutory child support guidelines. It explained:
With regard to child support, I am imputing the ability for mother to earn a minimum wage at full-time employment. She is voluntarily unemployed at this point. And I am using the father's net income on a monthly basis of $3,552. I am considering the father's obligation for support of another child that is living in his home and his obligation to provide insurance for [LH] to arrive at a downward deviation for child support of $450 per month ....
[¶13] Mother timely filed a Notice of Appeal as to "all aspects of the Order of Paternity, Custody, Visitation, and Support ...." (Emphasis in original.)
[¶14] The parties immediately struggled to comply with the district court's order, and the court held a hearing on their motions to clarify. The district court recognized that the holiday provisions permit the parties to manipulate the monthly visitation schedule because the order provides that, if a party selects monthly visitation that falls within a holiday period, the holiday visitation takes precedence over monthly visitation, and monthly visitation will not be made up absent agreement. So, for example, during an even-numbered year where Mother has LH during spring break, she can schedule Father's visitation within the spring break dates. Because the holiday supersedes monthly visitation, she would deprive Father of his visitation that month. Likewise, during odd-numbered years where Father is to have LH during spring break, he can schedule visitation outside of the spring break dates and exercise both monthly and holiday visitation. The district court described this arrangement as a "poison pill" meant to "get the parties to cooperate with one another, even though there hasn't historically been good cooperation."
[¶15] The district court also clarified that Father is entitled to choose the visitation method, and he can schedule monthly visitation periods back-to-back, so long as they fall within different months. The court again referred to the arrangement as a "poison pill" designed to enhance cooperation. Mother objected, stating that it was inequitable for Father to choose the visitation method and that back-to-back visitation essentially afforded him custody of LH rather than visitation. The court responded that the goal of the visitation plan was "to allow [Father] the ability to develop a relationship with the child given the distance between the parties." The district court issued no written order on these clarifications.
[¶16] The district court held another hearing after Father filed a Motion to Show *62 Cause, which alleged that Mother had willfully violated the court's order and asked the court to hold her in contempt. Father testified that Mother had denied him visitation on several occasions and that she refused to cooperate with his choice of travel, which had been the Denver exchange option "[e]very single time." The court found that missed visitation had been due to miscommunication or misunderstanding and refused to hold Mother in contempt.
DISCUSSION
I. Did Mother appeal an order over which this Court has jurisdiction?
[¶17] Whether this Court has jurisdiction is a question of law that we review de novo. Inman v. Williams , 2008 WY 81, ¶ 10, 187 P.3d 868, 874 (Wyo. 2008). "Under W.R.A.P. 1.04(a), this Court has jurisdiction to entertain an appeal from a judgment or from an appealable order." SEG v. GDK , 2007 WY 203, ¶ 4, 173 P.3d 395, 395 (Wyo. 2007). "[W]ithin 30 days from entry of the appealable order," W.R.A.P. 201(a), a party must file a notice of appeal that "[identifies] the judgment or appealable order ... appealed." W.R.A.P. 2.07(a)(2).
[¶18] Father argues that Mother's appeal should be dismissed for lack of jurisdiction because she is attempting to appeal the district court's clarification of its order, rather than the order itself. He argues that the clarification is not an appealable order because it did not determine the merits of the controversy; instead, it merely provided guidance as to how to comply with the order. We agree with this description of the clarification ruling, but our review of the record shows that Mother timely appealed an appealable order. Mother's Notice of Appeal specifically appealed the Order of Paternity, Custody, Visitation, and Support within 30 days of its entry, and before the clarification hearing had been held. In compliance with W.R.A.P. 2.07, she included the district court's order in an appendix to her Notice of Appeal. Her brief challenges the district court's award of visitation, its award of child support, and its allocation of travel expenses, all of which occurred in its Order of Paternity, Custody, Visitation, and Support.[2] Thus, we hold that we have jurisdiction to entertain this appeal.
II. Did the district court abuse its discretion when it imposed a graduated visitation plan requiring extensive travel that does not specify how visitation will work when the child starts kindergarten?
[¶19] The district court established a custody arrangement that gradually affords Father increased visitation. Mother argues that the visitation plan amounts to a de facto joint custody arrangement, which is contrary to the district court's finding that the best interests of the child would be served by awarding legal and physical custody to Mother.[3] Given that Father's total visitation time depends on the parties' holiday visitation choices, it is impossible to predict precisely how many days of the year the child will reside with each parent; therefore, we cannot say that this visitation plan amounts to de facto joint custody. However, we have abandoned any presumption "that shared custody is contrary to the best interests of the children," holding that "shared custody should be considered on an equal footing with other forms of custody."
*63 Bruegman v. Bruegman , 2018 WY 49, ¶ 16, 417 P.3d 157, 164 (Wyo. 2018). Rather than applying any presumption in favor of a particular form of custody, we focus on the best interests of the child. Id. at ¶ 16, 417 P.3d at 163-64. We therefore consider only whether this custody arrangement is in the child's best interest.
[¶20] We review custody and visitation determinations for an abuse of discretion. Williams v. Williams , 2016 WY 21, ¶ 13, 368 P.3d 539, 543 (Wyo. 2016). "It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration." Jacobson v. Kidd , 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018) (quoting Meehan-Greer v. Greer , 2018 WY 39, ¶ 14, 415 P.3d 274, 278 (Wyo. 2018) ). We will not overturn a district court's decision "unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." Id ."To determine whether a district court has abused its discretion, we must rely on the district court's articulation of the factors which were considered and how those factors support its conclusions." IC v. DW , 2015 WY 135, ¶ 12, 360 P.3d 999, 1004 (Wyo. 2015) (quoting Stevens v. Stevens , 2014 WY 23, ¶ 26, 318 P.3d 802, 811 (Wyo. 2014) ). The district court's articulation of its reasoning is critical when a court chooses an unconventional custody arrangement. Pace v. Pace , 2001 WY 43, ¶ 17, 22 P.3d 861, 867 (Wyo. 2001), overruled in part on other grounds by Bruegman , 2018 WY 49, 417 P.3d 157.
[¶21] Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2018 Supp.) sets forth factors district courts must consider in exercising their discretion to create a custody arrangement in the best interests of the child:
....
(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for the child's care by others as needed;
(iii) The relative competency and fitness of each parent;
(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;
(ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.
"No single factor is determinative," and "depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the best interests of the children ...." Stevens , 2014 WY 23, ¶ 26, 318 P.3d at 811. Applying these standards, we must conclude that the district court abused its discretion by fashioning a custody arrangement that is not in the best interests of the child.
[¶22] First, the arrangement imposes instability on LH at a very young age. We have repeatedly explained that "stability in a child's life is of utmost importance." Williams , 2016 WY 21, ¶ 26, 368 P.3d at 548 ; see also Testerman , 2008 WY 112, ¶ 15, 193 P.3d at 1145 ; Reavis v. Reavis , 955 P.2d 428, 432 (Wyo. 1998), overruled in part on other grounds by Bruegman , 2018 WY 49, 417 P.3d 157.[4] The order requires LH to alternate *64 frequently between Mother, who has been his primary caregiver throughout his life, and Father, who had never spent any time alone with him or cared for him overnight at the time the court issued the order. While not determinative, primary caregiver status is a weighty factor that the district court must consider. Bruegman , 2018 WY 49, ¶ 41, 417 P.3d at 170 ; Williams , ¶ 19, 368 P.3d at 546 ; Walter v. Walter , 2015 WY 53, ¶¶ 10-12, 346 P.3d 961, 965 (Wyo. 2015) ; In re Paternity of JWH , 2011 WY 66, ¶ 11, 252 P.3d 942, 947 (Wyo. 2011). Although the district court acknowledged that LH had "lived the majority of his life with [Mother]," it did not address how removing him from her care for a week or more each month would disrupt his life.
[¶23] Additionally, the district court failed to consider the difficulty the geographic distance between Mother and Father would cause LH. The court noted that the distance "requires significant hours to drive and a fairly significant flight [time] between the two locations" but did not appear to consider the impact of this regular disruption on LH. No matter which mode of transportation the parents choose, this visitation order will require LH to spend many hours each month on planes or in cars travelling between Wyoming and Arizona. As in Reavis , here the district court "provided scarce explanation for the custody arrangement ordered ... ; one which substantially deviates from the requests of the parties and is unique to the experience of this court." 955 P.2d at 432. We have previously found an abuse of discretion where "[t]he district court offered no explanation regarding the children's ability to handle the sweeping changes imposed, [nor expressed] why such changes would be in the children's best interests." Pace , 2001 WY 43, ¶ 19, 22 P.3d at 867 (quoting Reavis , 955 P.2d at 433 ).
[¶24] The district court's failure to determine how custody and visitation will work when the child starts school "further undermines the stability of his environment," Buttle v. Buttle , 2008 WY 135, ¶ 41, 196 P.3d 174, 183 (Wyo. 2008), overruled in part on other grounds by Bruegman , 2018 WY 49, 417 P.3d 157, and disregards the requirement in Wyo. Stat. Ann. § 20-2-201(d) (LexisNexis 2018 Supp.) that it "order custody in well defined terms to promote understanding and compliance by the parties." We have instructed district courts that visitation orders should "provide a meaningful schedule until [the child] reaches his majority." IC , 2015 WY 135, ¶ 21, 360 P.3d at 1005. While we have held that it is proper to impose a visitation arrangement that accommodates the growing child, JS v. MB , 2010 WY 114, ¶ 15, 237 P.3d 974, 978 (Wyo. 2010), this does not mean a district court can leave that accommodation as an open question to be relitigated in a few years. In Bruegman , the district court ordered shared custody between parents who lived in different communities until the child entered school, at which time primary physical custody would shift to the father. Id . at ¶ 10, 417 P.3d at 161. In analyzing whether this arrangement was in the child's best interests, we stated that the district court must tailor its visitation order to the child's age by specifying how the visitation order will change as the child gets older. Id. at ¶ 35, 417 P.3d at 169 (citing Long v. Long , 2018 WY 26, ¶¶ 26-27, 413 P.3d 117, 126 (Wyo. 2018) ). We held that the shift of primary physical custody to the father properly set forth a long-term visitation schedule, tailored to the child's age. Id. at ¶ 36, 417 P.3d at 169.
[¶25] This case is more like the custody arrangement imposed in Buttle . There, the district court directed two parents who lived in different cities to discuss where their child would attend school when he reached school age and, if they could not decide, to return to the district court to resolve the issue. Buttle , 2008 WY 135, ¶ 14, 196 P.3d at 178. We reversed the district court's award of custody in part for failing to provide a stable environment for the child. Id. at ¶ 41, 196 P.3d at 183. As in Buttle , the district court's order here "requires the parties to agree on a different arrangement once the child starts school or, failing that, return to the district court and let it decide." Id . This is contrary to our direction to specify how custody and visitation will change as the child ages, which is "especially necessary given the parties' acrimonious relationship and the distance between them." IC , 2015 WY 135, ¶ 21, 360 P.3d at 1005. When parties dispute custody and visitation, "[a] decree ... must provide *65 more detail so that the parents each understand their obligations, and so the decree may be enforced by contempt sanctions should that regrettably become necessary." Id .
[¶26] Further, a custody and visitation plan involving frequent exchanges of a child and joint travel arrangements necessarily requires effective communication and cooperative decision-making between parents. See Johnson v. Clifford , 2018 WY 59, ¶ 13, 418 P.3d 819, 823 (Wyo. 2018) ; Williams , 2016 WY 21, ¶¶ 24, 27, 368 P.3d at 547, 548 ; Buttle , 2008 WY 135, ¶¶ 39-40, 196 P.3d at 183. Here, the record demonstrates Mother and Father's inability to communicate about their son, comply with visitation orders, or accommodate one another's schedules for the benefit of their son. The district court offered no basis for its expectation that they would be able to cooperate to the degree the order requires. Their history offers no evidence that the order's "poison pills" would be anything but poisonous. The "[b]lind hope ... that forcing the responsibility of joint decision-making upon the warring parents will bring peace is not acceptable." Reavis , 955 P.2d at 434 (quoting Taylor v. Taylor , 306 Md. 290, 508 A.2d 964, 972 (1986) ). Before a court imposes a custody arrangement that requires a high degree of cooperation, it should have evidence that the parties can "work together to promote the child's best interest." Buttle , ¶ 39, 196 P.3d at 183. Our review of the record finds little support for that conclusion.
[¶27] We recognize that crafting custody and visitation arrangements "encompasses one of the most difficult and demanding tasks assigned to a trial judge," Bruegman , 2018 WY 49, ¶ 11, 417 P.3d at 161 (quoting Pace , 2001 WY 43, ¶ 11, 22 P.3d at 865 ), and we sympathize with the district court's goal "to allow [Father] the ability to develop a relationship with the child[.]" But that laudable goal does not outweigh the burdens the district court's order imposes on LH. The district court abused its discretion in failing to adequately consider the best interests of the child; we reverse the custody and visitation order, and remand for further proceedings consistent with this opinion.
III. Did the district court abuse its discretion in establishing Father's child support obligation?
[¶28] "We review a district court's order modifying child support, including deviations from presumptive child support, for abuse of discretion." Windham v. Windham , 2015 WY 61, ¶ 12, 348 P.3d 836, 840 (Wyo. 2015).
We will not interfere with the district court's decision regarding [deviation from the presumptive child support amount] absent a procedural error or a clear abuse of discretion. In determining whether the district court has abused its discretion, we must decide whether it could reasonably conclude as it did. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.
Keck v. Jordan , 2008 WY 38, ¶ 6, 180 P.3d 889, 891 (Wyo. 2008) (quoting Gray v. Pavey , 2007 WY 84, ¶ 8, 158 P.3d 667, 668 (Wyo. 2007) ).
[¶29] Mother contends that the district court abused its discretion in deviating from the presumptive child support amount because it considered Father's obligations to provide insurance for LH, without evidence of its cost, and to support his second child, without considering Mother's obligations to her other child.[5] We hold that the district *66 court's award of child support constitutes an abuse of discretion, although not for the reasons Mother advances.
[¶30] Child support calculated pursuant to Wyo. Stat. Ann. § 20-2-304 is rebuttably presumed to be the correct amount of child support. Wyo. Stat. Ann. § 20-2-307(a) (LexisNexis 2017). The statute requires every order or decree establishing child support to "set forth the presumptive child support amount and [to] state whether the order or decree departs from that amount." Id . We have found an abuse of discretion where a district court failed to set forth the presumptive amount of child support due. For example, in Moss v. Moss , we reversed a child support order where the district court ordered a party to pay monthly child support of $1000, apparently "based upon the amount of child support [he] agreed to pay during the pendency of the divorce," without identifying the statutory presumptive amount of child support or "mak[ing] basic findings of fact that would allow for the calculation of child support." 2007 WY 67, ¶ 12, 156 P.3d 316, 319 (Wyo. 2007). Likewise, in Long , we found an abuse of discretion where the district court "fail[ed] to state the presumptive amount" or "give any indication as to how [it] reached the [monthly child support] calculation." 2018 WY 26, ¶ 31, 413 P.3d at 127.
[¶31] Here, the district court's order did not set forth the presumptive child support amount, and we are unable to determine from the record what the presumptive child support amount would be. The district court ordered Father to pay monthly child support in the amount of $450, stating that it was deviating downward from the presumptive amount. The parties had stipulated to temporary child support based on Father's gross income of $3,556.17 per month during the pendency of Father's petition. But at the hearing on Father's petition, his attorney explained that "[another attorney] represented my client previously. They had come to an agreement about child support with [Mother's attorney], and I'm not sure what figures they used .... I don't believe they're correct." Father submitted a financial affidavit that listed his monthly gross income as $2,307.70. However, cross-examination revealed that this figure was incorrect. Father had listed the gross amount of his most recent paystub, but its pay period was only for half the month, meaning that his gross monthly income was roughly double the amount listed in his financial affidavit. Father testified that he had made a mistake and his gross monthly income "should be 4,000 [dollars]." He also testified, inconsistently, that his salary is $60,000 per year.
[¶32] In fixing child support, the district court did not choose any of these contradictory figures. Instead, it stated that it was "using father's net income on a monthly basis of $3,552." The district court did not state the presumptive child support amount, and the record does not contain reliable evidence to ascertain what that amount might be. See Noonan v. Noonan , 2005 WY 145, ¶ 8, 122 P.3d 964, 966 (Wyo. 2005) (finding that the district court failed to "obtain sufficient financial evidence of both parties' income to make factual determinations and to comply with [statutory support guidelines]" because the only evidentiary support for its child support award was a brief affidavit estimating the parties' respective income).
[¶33] Although the absence of a presumptive child support amount is a sufficient basis to reverse and remand, the record on the district court's deviation is also perplexing. "A court may deviate from the presumptive child support [amount] upon a specific finding that [it] would be unjust or inappropriate in that particular case." Wyo. Stat. Ann. § 20-2-307(b) (LexisNexis 2017). When a court deviates from the presumptive amount, it must "specifically set forth fully" the reasons for deviation. Id. The statute identifies particular factors for a district court to consider in determining whether to deviate, including "[t]he responsibility of either parent for the support of other children ... ; [t]he cost of transportation of the child to and from visitation; [and] [t]he ability of either or both parents to furnish health, dental and *67 vision insurance through employment benefits[.]" Id. at (b)(ii), (vii), (viii).
[¶34] We agree with Mother that the record includes no evidence of the cost of insurance, and that the district court did not consider her financial obligations to her other child. It also did not consider the cost of transporting LH to and from visitation, even though its order required extensive travel, which the parties had struggled to pay prior to the entry of the order. These omissions standing alone may not constitute an abuse of discretion. See Windham , 2015 WY 61, ¶ 15, 348 P.3d at 841 (finding no abuse of discretion where the district court deviated downward after considering Mother's responsibility to support her other child, but not Father's responsibility to support his other child). However, we urge the district court to obtain and consider additional evidence to support any deviation in order to comply with Wyo. Stat. Ann. § 20-2-307(b) 's requirement to "specifically set forth fully" its reasons for deviation.
CONCLUSION
[¶35] We remand for further proceedings consistent with this opinion.

Father visited LH over the Christmas holiday but missed some scheduled monthly visitation because he got in a car accident, and Mother told him she could not reschedule.

Mother's opening brief also argued that the district court imposed new obligations at the clarification hearing, resulting in a de facto modification of its order. However, neither the district court nor Father believed any new obligation arose at the clarification hearing, Mother conceded in her reply that "without a written order [the hearing was] little more than an expression of the district court's intent," and our review of that proceeding likewise does not reveal any obligations beyond those in the district court's order.

We agree that the visitation plan affords Father substantial visitation and "seems inconsistent with the district court's award of primary custody to [Mother]." Testerman v. Testerman , 2008 WY 112, ¶ 14, 193 P.3d 1141, 1145 (Wyo. 2008), overruled in part on other grounds by Bruegman v. Bruegman , 2018 WY 49, 417 P.3d 157 (Wyo. 2018). However, we have previously declined to hold that, standing alone, this inconsistency constitutes an abuse of discretion, and we likewise do not rely on it for our holding here. JS v. MB , 2010 WY 114, ¶¶ 8, 16, 237 P.3d 974, 976, 978 (Wyo. 2010).

Williams , Testerman , and Reavis each related instability to joint custody arrangements, which were presumptively disfavored at the time those cases were decided. Williams , ¶ 26, 368 P.3d at 548 ; Testerman , ¶ 15, 193 P.3d at 1145 ; Reavis , 955 P.2d at 432. Bruegman overruled our "archaic" presumption against joint custody, ¶¶ 15-16, 417 P.3d at 163-64, but stability remains an important consideration in determining the best interests of the child.

Mother also argues that the district court could not consider Father's other son in making custody and support determinations because the child was born out of wedlock and his paternity has not been adjudicated. She relies on an Arizona case, Castillo v. Lazo , 241 Ariz. 295, 386 P.3d 839, 842 (Ariz. Ct. App. 2016), which stated that a birth certificate is insufficient to establish paternity in an action challenging a purported father's paternity. See also Ariz. Rev. Stat. § 25-812 (LexisNexis 2018). However, although a purported father's signature on a birth certificate is not sufficient to establish paternity in such an action, it is sufficient to trigger a presumption of paternity for other purposes. Ariz. Rev. Stat. § 25-814(A)(3) (LexisNexis 2018). Here, Father is listed on the child's birth certificate, both he and his fiancée testified that he supports the child, and no one challenges Father's relationship to the child, including Mother whose counsel stated he "[had] no doubt" that Father is the biological father. For these reasons, we decline to hold that the district court abused its discretion in considering his obligations to his second child.