# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 20

## OCTOBER TERM, A.D. 2020

February 2, 2021

KELSEY N. SEARS,

Appellant
(Defendant),

v.

S-20-0138

TIMOTHY L. SEARS,

Appellee
(Plaintiff).

*Appeal from the District Court of Big Horn County*
The Honorable Bill Simpson, Judge

*Representing Appellant:*
> Bethia D. Kalenak, Bonner Law Firm P.C., Cody, Wyoming.

*Representing Appellee:*
> Christopher J. King, APEX Legal, P.C., Worland, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Kelsey N. Sears (Mother) appeals from portions of her divorce decree.  She argues the district court abused its discretion by establishing joint custody of the children and by failing to require Timothy L. Sears (Father) to pay her retroactive child support, temporary alimony, and attorney fees and costs.  Finding no abuse of discretion, we affirm.  We grant Father's request for attorney fees and costs under Rule 10.05 of the Wyoming Rules of Appellate Procedure (W.R.A.P.).

## ISSUES

[¶2]    The determinative issues are:

      1.    Did the district court abuse its discretion by awarding the parties joint custody of the children?

      2.    Did the district court abuse its discretion by failing to require Father to pay Mother retroactive child support?

      3.    Did the district court abuse its discretion by failing to require Father to pay Mother temporary alimony and her attorney fees and costs under Wyo. Stat. Ann. § 20-2-111 (LexisNexis 2019)?

      4.    Is Father entitled to his attorney fees and costs under W.R.A.P. 10.05?

## FACTS

[¶3]    Father and Mother married on August 10, 2013.  They have two children, LLS and TLS, who were born in 2012 and 2013, respectively.  LLS has medical conditions requiring daily treatments and medications and weekly doctor appointments, some of which occur out-of-state.

[¶4]    Father filed for divorce from Mother on February 16, 2017.  In the complaint, he accused Mother of being an "undiagnosed and untreated alcoholic" who "consume[s] a 30 pack of beer every other day, on her own."  Contemporaneous with the divorce complaint, he filed an ex parte motion seeking temporary sole custody of the children and requesting Mother have only supervised visitation with the children and undergo drug and alcohol testing prior to any visitation.  The district court granted Father's ex parte motion.

[¶5]    Several days later, Mother answered the divorce complaint and filed a motion to vacate the court's order granting Father temporary custody of the children.  She denied any alcohol problem and accused Father of being abusive and never properly caring for the children.  She sought dissolution of the marriage, sole custody of the children, reasonable

1

visitation for Father, and an order requiring Father to pay her child support per the statutory guidelines and provide medical insurance for the children. On March 13, 2017, the district court entered an order modifying its temporary custody and visitation decision. Because the parties did not designate this order as part of the appellate record, it is unclear what modifications the district court made.

[¶6] On March 16, 2017, Father and Mother, accompanied by their counsel, met and agreed to joint legal and physical custody of the children on an alternating week basis. While no formal order was entered modifying the order which granted Father temporary custody, the parties began performing according to their joint custody agreement on March 20, 2017.

[¶7] About a month later, on April 28, 2017, Mother filed a motion for temporary sole custody of the children and sought child support per the statutory guidelines. She alleged that since the parties began following their agreed joint custody arrangement, Father had failed to administer LLS's medications per the doctor's instructions, had missed LLS's medical appointments, and had asked Mother to take LLS to his doctor appointments. She also claimed that three days earlier, Father, with the children in the vehicle, had driven his car in reverse with the car door open and hit her with the door.

[¶8] On May 1, 2017, the district court entered an order based on the parties' March 16 agreement for shared custody. It vacated Father's temporary custody order and directed the parties to comply with the shared custody they agreed to. It ordered the parent in custody of LLS at the time of any doctor appointment to take LLS to the appointment. The court declined to order child support, and did not address any other portions of Mother's April 28 motion.

[¶9] In August 2017, Mother supplemented her April 28, 2017 motion. She informed the district court she had obtained a protection order against Father based on the car door incident and attached a copy of the order. She requested Father be ordered to pay her $386.63 per month in child support, retroactive to April 28, 2017, and half of LLS's incidental medical costs, including the costs of travel to out-of-state medical appointments.

[¶10] After holding a hearing on Mother's pending motion, the district court denied Mother's request for temporary sole custody of the children, finding it was in the children's best interests to continue with the parties' joint custody agreement until trial. Due to the protection order, however, the court directed the parties to exchange the children through their daycare facility. Because Mother testified at the hearing Father was not following the doctor's instructions in administering treatment and medication to LLS and Father claimed Mother had not responded to his request for the doctor's name to obtain such instructions, the court ordered the parties to provide each other with any doctor's instructions and to follow them. If either party believed the other was not properly administering medication or treatment to LLS, the court directed the parties to communicate those concerns through

2

their attorneys. If the concerns went unaddressed, the parties were to file the appropriate motion with the court. The court also ordered the parties to split the costs of any out-of-state doctor's appointments. The court again declined to grant child support because the parties were sharing custody and splitting the children's uncovered medical expenses, Father was providing medical insurance for the children and paying Mother's car insurance and cell phone bills, Father had not provided a confidential financial affidavit, and Mother had not updated her financial affidavit.

[¶11] Several months later, Father filed a motion for temporary sole custody of the children claiming Mother was not providing for the educational needs of one of the children (presumably LLS), which caused the child severe educational problems and exacerbated his medical condition. Mother countered with her own motion for temporary sole custody, again alleging Father was not following medical advice concerning LLS, continued to refuse to be involved in LLS's medical appointments, was not paying his share of the travel costs to LLS's medical appointments, had failed to keep Mother's car insurance and cell phone accounts current, and was not effectively communicating with her. She maintained the joint custody arrangement was unworkable and not in the children's best interests. She again sought child support. Mother also filed a motion under § 20-2-111 requesting Father pay her temporary alimony during the pendency of the divorce proceedings and her attorney fees and costs associated with defending the divorce. Father objected to Mother's motion, claiming he could not afford her requests. The motions were not heard by the time of trial.

[¶12] The court held a bench trial on the divorce complaint on October 21, 2019. Following trial, the district court issued a decision letter granting the parties a divorce, awarding them joint custody of the children per their agreement, and requiring Father to pay Mother $333 per month in child support beginning December 15, 2019. It ordered Father to continue to provide medical insurance for the children and the parties to split all uncovered medical expenses, including travel expenses for the children's out-of-state medical appointments. The court divided the parties' debt and property and ordered each party to pay his or her own attorney fees and costs. The decision letter was incorporated into a February 7, 2020, divorce decree. Mother appealed from the divorce decree.

**STANDARD OF REVIEW**

[¶13] We review the district court's custody, child support, alimony, and attorney fees decisions for an abuse of discretion. *Johnson v. Johnson*, 2020 WY 18, ¶ 10, 458 P.3d 27, 32 (Wyo. 2020) (citations omitted); *Kamm v. Kamm*, 2016 WY 8, ¶ 3, 365 P.3d 779, 780-81 (Wyo. 2016). *See also, Roberts v. Roberts*, 816 P.2d 1293, 1298 (Wyo. 1991) ("[A] court has broad discretion in deciding whether to award attorney's fees pursuant to [§ 20-2-111]."). "'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.'"

*Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018) (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017)) (other citation omitted). "A district court does not abuse its discretion if it could reasonably conclude as it did." *Id.* (citation omitted). *See also, Verheydt v. Verheydt*, 2013 WY 25, ¶ 19, 295 P.3d 1245, 1250 (Wyo. 2013) ("In determining whether an abuse of discretion occurred, our core inquiry is the reasonableness of the district court's decision." (citing *Hanson v. Belveal*, 2012 WY 98, ¶ 14, 280 P.3d 1186, 1192 (Wyo. 2012))).

## DISCUSSION

### 1. Custody

[¶14] In awarding custody and visitation, the best interests of the children are "paramount." *Johnson*, ¶ 12, 458 P.3d at 32 (quoting *Arnott v. Arnott*, 2012 WY 167, ¶ 31, 293 P.3d 440, 455 (Wyo. 2012), and *Stonham v. Widiastuti*, 2003 WY 157, ¶ 17 n.8, 79 P.3d 1188, 1194 n.8 (Wyo. 2003)). *See also, Martin v. Hart*, 2018 WY 123, ¶ 20, 429 P.3d 56, 63 (Wyo. 2018) ("It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration." (quoting *Jacobson v. Kidd*, 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018), and *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 14, 415 P.3d 274, 278 (Wyo. 2018))). To determine the children's best interests, a district court must consider the following list of non-exclusive factors:

> (i) The quality of the relationship each child has with each parent;
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
> (iii) The relative competency and fitness of each parent;
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
> (viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2019). "'No single factor is determinative,' and 'depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the [children's] best interests[.]'" *Martin,* ¶ 21, 429 P.3d at 63 (quoting *Stevens v. Stevens*, 2014 WY 23, ¶ 26, 318 P.3d 802, 811 (Wyo. 2014)).

[¶15] The district court considered each of the statutory factors. It found both parties (i) have a good quality relationship with the children; (ii) have support networks that can offer assistance when needed; (iii) are mentally competent and fit to parent; (iv) are willing to accept the responsibilities of parenting and care for the children at the specified times and relinquish custody at the specified times; (v) can strengthen their relationships with the children through liberal custody and visitation; (vi) appear to interact and communicate well with the children; (vii) do not interfere with the other's rights and responsibilities; (viii) live in the same geographic area; and (ix) are physically and mentally capable of caring for the children. While the court acknowledged the parties needed to improve their communication regarding LLS's medical needs and ordered them to complete a parenting class, it decided joint custody was in the children's best interests because it had been in place for at least three years, there was no indication it had adversely affected the children, and any change in that arrangement would not provide the children the necessary stability.

[¶16] Mother argues the district court abused its discretion by ordering the parties to share custody of the children. She maintains joint custody, while no longer disfavored in Wyoming, only works if the parties can effectively communicate and co-parent (factor (vi)). She claims the record shows the parties are unable to do so. She relies on the protection order she obtained against Father, arguing it is counterintuitive to require her to regularly communicate with her abuser. Mother also asserts the parties' numerous motions for orders to show cause and requests for sole custody demonstrate their inability to get along and their agreed custody arrangement was not working. She claims Father admitted at trial co-parenting with Mother had been difficult and the parties have communication issues. Mother also argues the court erred in finding each party was willing to accept the responsibilities of parenting (factor (iv)). According to her, Father's testimony and other evidence at trial showed he is not involved in LLS's medical treatment, had little to no involvement in LLS's Individualized Education Program, and he "may be improperly providing medication to LLS."

[¶17] Our review of the district court's final custody determination is severely limited due to Mother's failure to designate the transcript of the bench trial as part of the appellate record. W.R.A.P. 3.02(b) states in relevant part:

> In all cases other than criminal and juvenile matters, if the proceedings in the trial court were reported by an official court reporter, appellant shall, contemporaneously with the filing of the notice of appeal, file and serve on appellee a description of the parts of the transcript which appellant intends to include in the record and unless the entire transcript is to be included, a statement of the issues appellant intends to present on appeal. If an appellant intends to assert on appeal that a finding or conclusion is unsupported by the evidence or contrary to the evidence, appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.

W.R.A.P. 3.05(b), in turn, provides: "Appellant shall, contemporaneously with filing its brief in the appellate court and service of that brief upon appellee, file with the clerk of the trial court and serve on all parties and the appellate court clerk a designation for transmission of all parts of the record, without unnecessary duplication, to which appellant intends to direct the appellate court in its brief. . . ."

[¶18]  As required by the first sentence of Rule 3.02(b), Mother filed, contemporaneous with her notice of appeal, a "Description of Transcript to be Included in the Record," in which she notified Father she "intend[ed] to include the official court reporter's entire transcript in the record." Mother did not, however, include the bench trial transcript in her "Designation of Record on Appeal" as required by Rule 3.05(b) and the second sentence of Rule 3.02(b), even though she ordered the transcript and the court reporter filed it on May 28, 2020. Mother's "intent" to include the bench trial transcript in the record is not a substitute for doing so. *Golden v. Guion*, 2013 WY 45, ¶ 5, 299 P.3d 95, 96 (Wyo. 2013) ("When an appeal has been filed, '[i]t is the appellant's burden to bring to us a complete record on which to base a decision.'" (quoting *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo. 1996))).

[¶19]  Mother's failure to designate the bench trial transcript limits our review to those arguments not requiring a review of the transcript. *Johnson*, ¶ 33, 418 P.3d at 829 (citing *Golden*, ¶ 6, 299 P.3d at 97). The problem for Mother is all her arguments pertain to the reasonableness of the district court's joint custody decision, which the court made after receiving evidence at the bench trial. In such a situation, "we must assume that the evidence supported the district court's findings." *Id*. (citing *Golden*, ¶ 6, 299 P.3d at 97, and *Waterbury v. Waterbury*, 2017 WY 11, ¶ 14, 388 P.3d 532, 536 (Wyo. 2017)). Reviewing those findings, the district court did not abuse its discretion in concluding it would be in the children's best interests to continue the joint custody arrangement the parties had maintained for almost three years.

[¶20] In *Bruegman v. Bruegman*, 2018 WY 49, ¶ 16, 417 P.3d 157, 164 (Wyo. 2018), we held "there is no presumption that shared custody is contrary to the best interests of the children and shared custody should be considered on an equal footing with other forms of custody." Nevertheless, shared custody "requires effective communication and cooperative decision-making between parents." *Martin*, ¶ 26, 429 P.3d at 65 (citations omitted). The district court found Mother and Father needed to improve their communication regarding LLS's medical care and ordered them to complete a parenting class. However, it also found the joint custody arrangement had been in place for almost three years and no significant issues had arisen in that time. We have previously recognized the importance of stability in a child's life. *See In re KRA*, 2004 WY 18, ¶ 20, 85 P.3d 432, 439 (Wyo. 2004) (citing *Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo. 1995)) (because the parties had been exercising shared custody for over nine months (two years at the time of the appellate decision) and the custody arrangement had not caused the child any problems, a change in the shared custody arrangement was not in the child's best interest and would jeopardize stability in her environment ). Given the need for stability and the absence of any serious issues with the parties' joint custody arrangement, "we cannot say the district court was required to find the difficulties the parties had with communication at times outweighed the child[ren]'s interest in ensuring [they] see[] each parent as much as possible." *Bruegman,* ¶ 29, 417 P.3d at 166-67.

[¶21] The protection order against Father, which is part of the appellate record, merits consideration. "Domestic violence and spousal abuse are always contrary to the children's best interests." *See Johnson*, ¶ 20, 458 P.3d at 35 (citing *Gjertsen v. Haar*, 2015 WY 56, ¶ 39, 347 P.3d 1117, 1128 (Wyo. 2015), and *Williams v. Williams*, 2016 WY 21, ¶ 18, 368 P.3d 539, 545 (Wyo. 2016)). *See also*, § 20-2-201(c) ("The court shall consider evidence of spousal abuse or child abuse as being contrary to the best interest of the children. If the court finds that family violence has occurred, the court shall make arrangements for visitation that best protects the children and the abused spouse from further harm."). "However, in determining custody in the best interest of a child, evidence of spousal abuse is only one of the factors district courts are required to consider." *Buttle v. Buttle*, 2008 WY 135, ¶ 23, 196 P.3d 174, 180 (Wyo. 2008), *overruled on other grounds by Bruegman*, 2018 WY 49, 417 P.3d 157. Furthermore, without a transcript, it is impossible for us to review the nature of the event which served as the basis for the protection order, or to put it into context with the best interests of the children at the time of the trial.

[¶22] The district court did not explicitly mention the protection order in its final custody decision. It did, however, address the protection order in its October 2017 decision letter. It ordered the party with custody to drop the children off at daycare on Monday morning with everything the children would need for the following week; the other party would pick up the children from daycare on Monday afternoon to begin his or her week with the children. The district court incorporated this provision into its final custody decision. Such arrangement protects Mother from being in Father's physical presence. Moreover, at the time of the court's final custody decision, it had been over two years since the car door

7

incident and no further act of domestic abuse had occurred. There is no evidence the car door incident adversely affected Father's relationship with the children or his ability to parent. Indeed, the circuit court, which found the car door incident constituted an act of domestic abuse and issued the protection order, also found the incident did not impact Father's ability to parent. The record before us contains no indication of any continuing concern about domestic abuse. Under these circumstances, we cannot say the district court abused its discretion in not further considering the protection order in its final custody determination. *See Williams*, ¶ 18, 368 P.3d at 545 (finding district court did not abuse its discretion by declining to base its custody decision on the spousal abuse which occurred during the marriage where court found Father was "evolving" and that "to the extent [the spousal abuse] existed . . . it is not there anymore"), *overruled on other grounds by Bruegman*, 2018 WY 49, 417 P.3d 157.

[¶23] Mother indicates there have been three motions for orders to show cause between the parties, and argues these motions indicate the inability of the parties to successfully share custody. However, those motions were all filed <u>after</u> the district court's December 2019 final custody decision letter. The district court could not have considered the facts alleged in those motions prior to making its custody decision. With respect to the parties' numerous requests for temporary custody of the children, there is no question the divorce proceedings have been contentious at times. However, there was also a period of over a year when no pleadings were filed by either party, which indicates the parties either did not have any difficulties with the custody arrangement or they were able to address their concerns through their attorneys without court intervention.[1]

[¶24] Based on the record before us, we conclude the district court did not abuse its discretion in awarding the parties joint custody of the children.

### 2. *Retroactive Child Support*

[¶25] The district court did not specifically address retroactive child support in its December 2019 decision letter or in the divorce decree. However, it did provide its reasoning for not ordering child support during the pendency of the divorce proceedings in its October 2017 decision letter. It explained: the parties were sharing custody and splitting

---

[1] Mother argues that when both parties came to the court in 2019 seeking sole custody of the children, they indicated the joint custody arrangement was not working. Mother claims that in such a situation, the court was required to revisit the custody issue and award sole custody to one of the parties. The case Mother relies on, however, addressed whether there had been a material change in circumstances justifying the reopening of a <u>final</u> joint custody order. *See Gurney*, 899 P.2d at 55 (citing *Moody v. Moody*, 715 P.2d 507, 510 (Utah 1985)). In this case, the parties' 2019 motions sought <u>temporary</u> custody of the children and modification of the court's <u>temporary</u> custody order. Indeed, in her motion, Mother stated, "As this is a temporary order it is not necessary that the court find a material change in circumstances has taken place in order to modify the custodial arrangement. The court need only determine what temporary custody arrangement is in the best interests of the minor children."

the children's uncovered medical expenses; Father was providing medical insurance for the children and paying Mother's car insurance and cell phone bills; the parties had not addressed support in their stipulated temporary custody arrangement; and the parties' financial affidavits were lacking.

[¶26]   Mother maintains the district court abused its discretion by failing to award her child support beginning February 21, 2017, the date she first requested such support in her response to Father's ex parte motion for temporary custody.  She claims retroactive support is allowed under Wyo. Stat. Ann. § 20-2-311(d)(ii) (LexisNexis 2019) and was appropriate because Father left her with $100, which is insufficient to support two children.  While the court noted in October 2017 Father was paying Mother's car insurance and cell phone bills, Mother contends the court did not specify those payments were in lieu of child support but, in any event, Father failed to keep those payments current.

[¶27]   Mother's arguments rely primarily on testimony and evidence from the bench trial. As stated above, because she did not designate the bench trial transcript as part of the appellate record, we must assume the testimony and evidence at trial supported the district court's decision to require Father to begin paying child support on December 15, 2019. Moreover, Mother's claim that the district court never specified Father's payment of her car insurance and cell phone bills was in lieu of child support is contrary to the court's October 2019 decision letter and inconsistent with her position in the district court.  In her 2019 motion seeking temporary custody of the children, she stated "[n]o child support has been ordered" and explicitly acknowledged, "The current child support order was based, in part, on [Father's] payment of [Mother's] car insurance and cell phone bills."  Given the parties were sharing custody of the children, Father had been providing insurance for the children and paying half of their uncovered medical expenses and some of Mother's expenses, and the court did not have sufficient financial information from the parties for the period of retroactivity, the district court's decision not to award Mother retroactive child support was reasonable.

### 3.  *Temporary Alimony and Court Costs*

[¶28]   Section 20-2-111 provides in relevant part:  "In every action brought for divorce, the court *may* require either party to pay any sum necessary to enable the other to carry on or defend the action and for support and the support of the children of the parties during its pendency."  (Emphasis added).  The statute does not require the requesting party "to prove financial necessity, nor is the award meant to punish the [other] party."  *McMurry v. McMurry*, 2010 WY 163, ¶ 17, 245 P.3d 316, 321 (Wyo. 2010) (emphasis omitted) (citing *Black v. De Black*, 1 P.3d 1244, 1252 (Wyo. 2000) and *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo. 1978)).  "The purpose of attorney fees in a divorce case is to assist the party, as necessary, so that the party can carry on or defend the action."  *Black*, 1 P.3d at 1252 (citing *Hendrickson*, 583 P.2d at 1268, and *Prentice v. Prentice*, 568 P.2d 883, 886 (Wyo. 1977)).

[¶29] Mother argues the district court abused its discretion by failing to order Father to pay her temporary alimony and her attorney fees and costs to defend the divorce action under § 20-2-111. She claims Father's filing of the divorce petition forced her to incur the expenses of litigation and he has increased those costs by failing to follow court orders, thereby requiring her to bring numerous motions seeking his compliance. She also argues Father left her in a state of poverty when they separated and, despite his claim to the contrary, Father can afford her requests as he initially resided in a trailer owned by the parties, paid no child support, incurred no daycare expenses, and did not pay his portion of LLS's medical expenses. Given his reduced child support obligation of $333 per month and his $2,245 monthly salary, Mother alleges he can "certainly afford to contribute to [her] fees and costs."

[¶30] The district court did not abuse its discretion in failing to award Mother temporary alimony and her attorney fees and costs. Mother's arguments again rely primarily on testimony presented at the bench trial, which we have no way of reviewing due to her failure to designate the trial transcript as part of the appellate record. As a result, we assume the evidence at trial supported the district court's decision requiring each party to pay his or her own attorney fees and costs. While Mother did incur costs in seeking temporary custody of the children due to Father's alleged failures to abide by the court's previous orders, Father also incurred costs in moving for temporary custody based on Mother's alleged failure to provide for LLS's educational needs. The appellate record reveals both parties filed motions for orders to show cause based on the other's alleged noncompliance with court orders. However, as stated above, those motions occurred <u>after</u> the district court's final decision letter requiring each party to bear his or her own costs and attorney fees. Moreover, in their show cause motions, the parties requested the fees and costs they incurred in bringing the motions. While the record does not reveal whether the district court awarded the requested fees, Mother's attempt to rely on these subsequent motions as a basis for an award of support and fees during the divorce proceedings is unavailing.

### 4. W.R.A.P. 10.05

[¶31] Father argues Mother had no reasonable cause to bring this appeal, failed to present cogent argument, and disregarded our precedent. He requests an award of his attorney fees and costs under W.R.A.P. 10.05.

[¶32] Rule 10.05(b) states: "If the court certifies . . . there was no reasonable cause for the appeal, a reasonable amount of attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." "Rule 10.05 sanctions 'are generally not available for challenges to discretionary rulings, unless an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Fleet v. Guyette*, 2020

WY 78, ¶ 66, 466 P.3d 812, 828 (Wyo. 2020) (quoting *Deede v. Deede*, 2018 WY 92, ¶ 10, 423 P.3d 940, 943 (Wyo. 2018)) (other citation and quotation marks omitted).

[¶33] Mother challenges discretionary rulings. Nevertheless, we conclude Father is entitled to recover the reasonable attorney fees and costs he incurred in responding to this appeal. The rulings Mother challenges in this appeal were made after a bench trial. While the bench trial was reported, Mother failed to designate the transcript as part of the appellate record. Despite this failure, she cited and relied on the transcript throughout her brief. She also improperly relied on events after the district court issued its final decision letter, as well as an argument inconsistent with that made in the district court. Father shall submit a statement of attorney fees and costs to this Court for our review. We will determine the proper amount to be awarded after receiving his submission.

## CONCLUSION

[¶34] The district court did not abuse its discretion by awarding the parties joint custody of the children and by refusing to require Father to pay Mother retroactive child support, temporary alimony, and her attorney fees and costs for the district court divorce proceedings. We affirm the district court's divorce decree. We grant Father's request for his attorney fees and costs on appeal under W.R.A.P. 10.05.