# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 165

### OCTOBER TERM, A.D. 2022

### December 30, 2022

ELISHA SCHLAFKE BAER,

Appellant
(Defendant),

v.                                                                    S-22-0052

JOHN S. BAER III,

Appellee
(Plaintiff).

*Appeal from the District Court of Big Horn County*
The Honorable Bill Simpson, Judge

*Representing Appellant:*
    Letitia C. Abromats, Letitia C. Abromats, P.C., Greybull, Wyoming.

*Representing Appellee:*
    Christopher J. King, APEX Legal, P.C., Worland, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     The district court granted John S. Baer, III's (Father) petition to modify the parties' divorce decree by awarding him primary physical custody of the children and restricting Elisha Schlafke Baer's (Mother) visitation with the children.  Mother appeals that decision and a temporary custody and visitation order entered while the modification action was pending.  We find no abuse of discretion and affirm.

## ISSUES

[¶2]     The issues for our review are:

1.     Did the district court abuse its discretion by suspending Mother's right to overnight visitation with the children for part of the time the modification action was pending?

2.     Did the district court abuse its discretion by granting Father sole legal and primary physical custody of the parties' minor children?

a.     Did the district court fail to adequately consider Mother's claims Father abused her?

b.     Did the district court improperly discount Mother's expert witness's testimony?

c.     Did the district court err by granting Father sole legal custody of the children?

d.     Did the district court err by ordering Mother to abstain from consuming alcohol during visitation with the children?

3.     Is Father entitled to attorney fees under Wyoming Rule of Appellate Procedure (W.R.A.P.) 10.05?

## FACTS

### *Divorce Decree*

[¶3]     Mother and Father married in 2013 and had two children – TJB (a son born in 2014) and ERB (a daughter born in 2016).  The parties divorced in 2019.  They appeared before the district court pro se and agreed on the terms of the divorce decree which granted Father "sole legal and physical custody" of the children.  In explaining this choice of custody, they stated:  "Mother is just starting out on her own.  Just for safe measures."  Despite their

1

agreement Father would have sole physical custody of the children, the visitation provisions of the decree stated the parties would have alternating weeks of custody.[1] The parties also agreed neither of them would pay child support. The district court signed the decree without modifying any of these terms.

### Modification Petitions and Motions

[¶4]    On June 22, 2020, Father filed a petition to modify the parties' divorce decree to limit Mother's visitation with the children and require her to pay child support. Father alleged a material and substantial change in circumstances had occurred since the divorce which warranted modification of the decree because, although the decree awarded each party equal time with the children, he had been caring for the children "more than 80% of the time." He additionally claimed Mother "fail[ed] to inform [him] of where the minor children [were] located" when they were in her custody, "fail[ed] to provide adequate supervision" of the children, was "often at the bar to late hours" while the children were in her care, and was "acting erratically and not in a stable manner." Father also filed a motion to temporarily modify Mother's visitation with the children pending final resolution of his petition. Besides the allegations in his petition, Father asserted in his temporary custody motion that Mother had returned the children to him with injuries and inadequate clothing.

[¶5]    Mother filed an answer and counterclaim seeking primary physical custody of the children and child support. She stated that, since the divorce, she had "settled into a job and home." She claimed Father was withholding the children from her, had coerced her to sign the divorce decree and misled her about its terms, and was physically abusive during their marriage. Mother also contested Father's request for a temporary modification of her visitation rights and sought custody of the children and child support while the action was pending.

### Temporary Custody Hearing

[¶6]    On August 25, 2020, the district court held an evidentiary hearing to address temporary custody of the children. Father presented evidence demonstrating that, until recently, he and his girlfriend, Brandy Holloway, had watched the children while Mother worked during her custodial weeks. Mother was often late dropping the children off in the mornings and picking them up after work. Frequently, they were not ready for school because they were not dressed in appropriate clothes, were dirty and had messy hair, and were hungry. Father voiced concern the children were not being properly supervised while in Mother's care because they had arrived at his house with various injuries, some of which

---

[1] Alternating week custody is more properly characterized as joint or shared custody. *See, e.g., Parris v. Parris,* 2009 WY 44, ¶¶ 14, 17, 204 P.3d 298, 303-04 (Wyo. 2009) (alternating weeks of custody is shared custody); *Eickbush v. Eickbush,* 2007 WY 179, ¶ 7, 171 P.3d 509, 511 (Wyo. 2007), *overruled on other grounds by Bruegman v. Bruegman*, 2018 WY 49, 417 P.3d 157 (Wyo. 2018) (the district court ordered shared physical custody of the children, alternating weekly).

Mother did not "even know where they came from." Father stated Mother had recently found another person to provide childcare while she worked, but she had refused to provide him with the provider's name, phone number, or location.

[¶7] Father also testified Mother did not have a suitable residence for the children. He stated Mother lived with her boyfriend, James Bidleman, in a place that lacked sufficient bedrooms. Both children had slept in a bed with Mr. Bidleman's six-year-old son until Father expressed concern about ERB sleeping with two boys. Mother then moved her to the couch to sleep. Father was also concerned about Mother's alcohol use. He had witnessed her car parked outside a bar on multiple occasions while the children were in her custody, and she did not inform him of who was watching the children while she was at the bar. Father testified Mother consumed significant amounts of alcohol while they were married but, based upon the amount of time she was spending in the bar, he believed her alcohol consumption had increased. During the Greybull Days of '49 celebration in June 2020, Father took the children from Mr. Bidleman when he saw Mr. Bidleman drinking alcohol and Mother was "nowhere in sight." Father admitted on cross-examination that he had not let Mother see the children since that time.

[¶8] Mother testified she had changed childcare providers because Father had become hostile when she picked up the children. She refused to give Father information about the new provider because she was concerned about what Father would do to the young female provider. This concern originated from her assertion that Father had given her a black eye, "drop-kneed" her, and held her hostage in her own home when they were married. She also testified that, after they divorced, Father pushed her during an exchange of the children.

[¶9] Mother explained Mr. Bidleman was no longer her boyfriend; however, they remained friends and continued to share a bedroom because of a "lack of space" in the residence. Mother testified she and Mr. Bidleman were "planning on putting . . . a bigger trailer on [their] property." The new trailer would have three bedrooms so Mr. Bidleman would have his own room, the two boys would share a room with bunkbeds, and Mother and ERB would share a room.

[¶10] Mother acknowledged she went to the bar "quite a bit" but claimed she did so to practice playing darts because she was interested in joining a dart league. She admitted to leaving the children with Mr. Bidleman's mother "maybe twice" to go to the bar but said the children were already asleep when she left. When asked about her "pattern of drinking," Mother testified she "frequent[ed] the bar a lot more" when she did not have the children. She admitted to having "one tall can" of an alcoholic beverage each night after the children went to bed when they were in her care.

[¶11] In its oral ruling immediately after the hearing, the district court ordered Mother not to use alcohol while she was with the children. The written temporary custody order

3

retained Father as sole legal and physical custodian of the children. It changed Mother's visitation to three weekend days and two weekdays per month but forbade her from keeping the children overnight. The court justified the order by stating:

> [T]he [c]ourt has concerns related to [Mother's] use of alcohol and [Mother's] living situation and specifically the sleeping arrangements within the home and based upon those concerns believes the stability of the children [would be] better served with a resolution of the living arrangements.

However, the district court also ruled that "[u]pon modification of the sleeping arrangements and notice thereof [it] may hold an additional hearing on modification of visitation." True to its word, when Mother obtained suitable housing, the court modified the temporary custody order to allow Mother overnight weekend visitation with the children.

### *Custody and Visitation Modification Trial*

[¶12] The trial on the parties' competing petitions for modification of custody and visitation proceeded with the same general themes. Ms. Holloway testified she believed Mother was still drinking alcohol because she had recently received two middle-of-the-night calls from Mother for no reason. This was "similar in pattern and behavior to when [Mother] was going to the bars at all hours." Father testified he believed Mother was still drinking because the people she surrounded herself with were "[j]ust the normal drunks at a bar that go daily, nightly." Mother denied having a drinking problem. She testified she had rarely been to the bar since the temporary custody hearing. She said she no longer drank when the children were in her care and only consumed "half a beer to a beer after work" when they were not with her. Mother admitted to making one late-night call to Ms. Holloway, but said it was a mistake because she had intended to call her boyfriend.

[¶13] Ms. Holloway and Father testified the children's lives had improved since the temporary custody orders were in place. Ms. Holloway stated that, when Mother had custody on alternating weeks, she often did not pick the children up until after they should have been in bed and did not consistently work with them on potty training. At the time of the trial, the children had a consistent routine, both were potty-trained, their speech had improved, and TJB was "doing so much better in school." Father took the children to all medical and specialist appointments, including those which required traveling significant distances, and financially supported them with no help from Mother.

[¶14] Mother agreed the children were doing well in school and their speech and potty-training had improved under the temporary custody arrangement. However, she still believed it was in the children's best interests for her to have primary physical custody because Father "use[d] the children for power and control" and was abusive to her. She

4

claimed Father had given her a black eye while they were married. She also said that, after the divorce, Father had come to her apartment angry because TJB had a burn mark on his head. Father went through the apartment looking for a curling iron which may have caused the mark. Mother testified Father did not find anything, but he refused to leave her apartment until she had sex with him. On a separate occasion, he entered her apartment uninvited at 2:30 a.m. and laid down on the bed next to her while she slept. She implied he was seeking sex. She was "terrified" when she awoke because he had previously been physically abusive to her. Father denied ever requesting sex from Mother after the divorce.

[¶15] Mother called Jeffrey Jacobs, a representative from Father's prior place of employment, to testify at trial. Mr. Jacobs testified Father had been terminated from his position for "documented behavioral issues." According to Mr. Jacobs, the employer had concerns about Father's conflicts with other employees. Father apparently told a supervisor that "people say I start confrontations, I believe you go up and talk it out or you scrap it out." Mr. Jacobs said he talked to other employees about their conflicts with Father and his threatening behavior. The employer also had an issue with Father being untruthful about missing work due to an injury and illness. Mr. Jacobs admitted Father was never involved in any actual physical violence at work.

[¶16] Mother called Jana Halter, a licensed professional counselor, to testify on "power and control" dynamics in child custody cases where spousal abuse is involved. Ms. Halter stated she had reviewed Father's personnel file from his former employer and believed the conduct described in the report demonstrated a "wanton disregard for authority." Mother presented a hypothetical where an ex-husband demands his former wife have sex with him. Ms. Halter said the situation demonstrates an imbalance of power in the relationship, which would allow the man to coerce and intimidate the woman in other ways, including in matters regarding their children. Ms. Halter also opined that evidence of controlling behavior in multiple environments, like the workplace and "intimate relationships," indicates a personality disorder issue. She stated a person with a confrontational personality may engage in a "combative way[] of parenting," which "would, in theory, elicit [in the children] a lo[ss] of control, fear of the parent, and inability for them to express themselves." She further related that children of a combative parent may present with "anxiety[,] depression, [and] attachment disorder[s] . . . ." Ms. Halter stated her opinion that when a parent hits or screams at the children, it damages the parent-child relationship which can affect the children's "decision-making skills at school and how they feel about themselves." On cross examination, Ms. Halter admitted she was not Mother's counselor, had not interviewed Father or the children, had not diagnosed Father with any psychopathology, and had no evidence Father was inappropriate in any way with the children.

[¶17] After the trial, the district court found there was a material change in circumstances since the 2019 divorce decree. Using the factors set out in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2021), the district court found it was in the children's best interests to remain

in Father's custody. It continued weekend visitation for Mother as set out in the temporary order but added a Wednesday night visitation every other week and six weeks of uninterrupted summer visitation. It also set a holiday visitation schedule and ordered Mother to pay child support. The order contained a provision prohibiting Mother from consuming alcohol when the children were in her care. Mother filed a timely notice of appeal of the district court's decision.

## STANDARD OF REVIEW

[¶18] We review the district court's temporary and final custody and visitation orders for an abuse of discretion.

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. . . . We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle. . . . A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Meehan-Greer v. Greer,* 2018 WY 39, ¶ 14, 415 P.3d 274, 278-79 (Wyo. 2018) (quoting *Stevens v. Stevens,* 2014 WY 23, ¶ 8, 318 P.3d 802, 805-06 (Wyo. 2014)) (other citations and quotation marks omitted). *See also, Womack v. Swan,* 2018 WY 27, ¶ 11, 413 P.3d 127, 133 (Wyo. 2018) (temporary custody orders are reviewed for abuse of discretion) (citing *Gjertsen v. Haar,* 2015 WY 56, ¶ 11, 347 P.3d 1117, 1122 (Wyo. 2015)). We review questions of law de novo. *Kimzey v. Kimzey,* 2020 WY 52, ¶ 64, 461 P.3d 1229, 1246 (Wyo. 2020); *Gjertsen,* ¶ 11, 347 P.3d at 1122.

## DISCUSSION

### 1. Temporary Order

[¶19] Wyo. Stat. Ann. § 20-2-112(b) (LexisNexis 2021) provides: "On the application of either party, the court may make such order concerning the care and custody of the minor children of the parties and their suitable maintenance during the pendency of the action as

is proper and necessary . . . ." The district court ordered Mother not to use alcohol around the children and suspended her overnight visitation due to concerns about her improper use of alcohol and living situation, specifically the sleeping arrangements at Mr. Bidleman's residence. Mother claims the district court's suspension of her overnight visitation was erroneous and that error infected the final custody determination because the district court found her decreased access to the children diminished her ability to facilitate a stronger relationship with them. She maintains Father did not produce sufficient evidence at the temporary custody hearing to show she misused alcohol or the sleeping arrangements at Mr. Bidleman's residence were harmful to the children.

[¶20]   According to Mother, the only evidence she improperly used alcohol was Father's unsubstantiated testimony. He testified he had seen her car parked outside of a bar on multiple occasions while the children were in her custody, she did not tell him who was watching the children while she was at the bar, Mother had consumed alcohol in excess during the marriage, and Father believed her alcohol consumption had increased. She claims she refuted this testimony when she explained she went to the bar to play darts, she only consumed one alcoholic drink at night after the children went to bed, and she did not otherwise drink around the children. Mother ignores our standard of review which requires us to give every favorable inference to Father's evidence and remove from consideration any of her evidence. When that standard is applied, the record supports the district court's finding that Mother misused alcohol.

[¶21]   The district court was also troubled by Mother's living situation and how the children viewed Mother and Mr. Bidleman still sleeping in the same bed when they were no longer romantically involved. It stated the sleeping arrangements were "confusing . . . to adults" and it "[could] only imagine that they [were] probably somewhat disconcerting to the children." Mother complains the court used a double standard when it suspended her visitation because she was sleeping with Mr. Bidleman but said nothing about Father sleeping with Ms. Holloway even though they were not married.

[¶22]   We view the district court's ruling differently. The court was concerned about the lack of stability in the children's lives when they were in Mother's custody. Both Mother's relationship with Mr. Bidleman and her housing situation were in a state of flux. In addition to the unconventional sleeping arrangement between Mother and Mr. Bidleman, ERB had been sleeping in a bed with two boys until Mother moved her to the couch after Father objected. This move left the young girl without a bedroom or a bed. Mother said she and Mr. Bidleman had plans to secure a bigger trailer, but she did not know when that would happen because she was "not the one working on it, so we are hoping soon."

[¶23]   "Stability is of the 'utmost importance'" to children's "well-being." *Womack*, ¶ 14, 413 P.3d at 134. In *Tracy v. Tracy*, 2017 WY 17, ¶¶ 28, 32, 388 P.3d 1257, 1263-64 (Wyo. 2017), we approved the district court's decision to grant the father temporary custody of the children while his petition to modify the custody and visitation provisions of the divorce

decree was pending. The father sought modification when the mother announced her plan to move with the children from Sheridan (where the father lived) to Gillette and live in a "toy hauler trailer" with her boyfriend while they saved money to build a house. *Id.,* ¶¶ 1, 4, 9, 388 P.3d at 1259-60. The court found the father provided a more stable living environment for the children and expressed particular "concern over [the] [m]other's somewhat unsettled and provisional planning for the future." *Id.,* ¶¶ 10-11, 388 P.3d at 1260.

[¶24] Similar to *Tracy,* the district court in this case made the reasoned judgment that, until Mother's living situation stabilized, the children would be better off not having overnight visitation with her. After she secured suitable housing, the court modified the temporary custody order to allow overnight visitation. The court did not abuse its discretion by suspending Mother's overnight visitation with the children until she could provide a more suitable living environment for them.

### 2. Final Order Modifying Custody and Visitation

[¶25] Section 20-2-204(c) allows a court to "modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to [§] 20-2-201(a)." Thus, courts employ a two-step analysis when considering a petition for a change in custody or visitation. *Jacobson v. Kidd,* 2018 WY 108, ¶ 16, 426 P.3d 813, 820 (Wyo. 2018). *See also, Jensen v. Milatzo-Jensen,* 2013 WY 27, ¶ 8, 297 P.3d 768, 773 (Wyo. 2013) (citing *In re TLJ,* 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006)). The first step requires proof of a material change in circumstances since the governing custody order. *Jacobson,* ¶ 16, 426 P.3d at 820; *Meehan-Greer,* ¶ 17, 415 P.3d at 279-80. "Because of the res judicata effect afforded custody orders, such a finding is a threshold requirement. The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of a substantial or material change of circumstances which outweigh[s] society's interest in applying the doctrine of res judicata to a custody order." *Jacobson,* ¶ 16, 426 P.3d at 820 (quoting *Bishop v. Bishop,* 2017 WY 130, ¶ 11, 404 P.3d 1170, 1173 (Wyo. 2017)) (other citations and quotation marks omitted).

[¶26] Once a material change of circumstances is established, the court turns to the second step of the analysis, which requires determination of whether modification of the custody or visitation order is in the children's best interests. *Meehan-Greer,* ¶ 25, 415 P.3d at 281 (citing *Jensen,* ¶ 8, 297 P.3d at 772). Section 20-2-201(a) governs the best interests analysis:

> In determining the best interests of the child, the court shall
> consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

[¶27]   The district court found a material change in circumstances had occurred since entry of the 2019 divorce decree.  Although the decree provided for alternating weeks of custody, Father had cared for the children for much longer periods of time than Mother because, during her custody weeks, Father and Ms. Holloway watched the children while Mother worked.  The district court also noted that, under the temporary custody orders, Mother's time with the children had been reduced even more, further diminishing the time she had to achieve the relationship with the children envisioned by the original decree.  Mother does not contest the district court's finding of a material change in circumstances.

[¶28]   The district court provided a detailed evaluation of the best interests factors in § 20-2-201(a).  It concluded most of the factors weighed evenly, but Father had a better quality of relationship with each child than Mother (§ 20-2-201(a)(i)) and Father was more competent and fit to parent than Mother (§ 20-2-201(a)(iii)).  It found the children were doing "very well" under the temporary order with Father having primary physical custody and Mother having visitation.  While it acknowledged that Mother had presented evidence of Father's confrontational and violent tendencies at work and in their relationship, it stated there was no evidence those tendencies "exhibited themselves at home, and particularly at home in front of the children" or had any negative effect on the children.  Although Mother had improved her circumstances since entry of the first temporary order by securing stable housing and reducing her alcohol consumption, Father consistently provided a more stable living environment for the children and it was in their best interests for Father to have primary physical custody of them.  Mother does not specifically address the district court's analysis of the § 20-2-201(a) factors, but she does take issue with some of its discrete findings and rulings.

### a.  Evidence of Spousal Abuse

[¶29]   Mother asserts the district court erred in evaluating the evidence that Father abused her during and after the marriage.[2]  Section 20-2-201(c) directs "[t]he court [to] consider evidence of spousal abuse or child abuse as being contrary to the best interest[s] of the children."  However, evidence of abuse is not conclusive of the custody and visitation decision.  "[I]n determining custody in the best interest[s] of a child, evidence of spousal abuse is only one of the factors district courts are required to consider." *Buttle v. Buttle,* 2008 WY 135, ¶ 23, 196 P.3d 174, 180 (Wyo. 2008), *overruled on other grounds by Bruegman v. Bruegman,* 2018 WY 49, 417 P.3d 157 (Wyo. 2018).  A district court may, in its discretion, give limited weight to isolated and remote incidents of violence.  *See Gjertsen,* ¶ 39, 347 P.3d at 1128 (court did not abuse its discretion by refusing to find isolated and remote incidents of violence amounted to a material change of circumstances) (citing *Hanson v. Belveal,* 2012 WY 98, ¶ 47, 280 P.3d 1186, 1200 (Wyo. 2012)).

[¶30]   The district court specifically addressed Mother's allegations concerning the black-eye, coerced sex, and unauthorized entry to her apartment/bed in its decision letter.  It discussed Mother's testimony about the black eye in its analysis of the relative competency and fitness of each parent under § 20-2-201(a)(iii) and in its final weighing of the evidence.  The court ruled the incident occurred before the divorce, was isolated, and there was no evidence it "had any particular negative effect on the children."  The court's decision is supported by *Sears v. Sears,* 2021 WY 20, ¶¶ 22-24, 479 P.3d 767, 774-75 (Wyo. 2021), where we affirmed the district court's joint custody decision.  We ruled the district court

---

[2] The district court allowed limited evidence regarding the parties' conduct before the divorce.  The issue of whether that was an appropriate ruling given the res judicata effect of the divorce decree is not before us.

did not abuse its discretion by giving little weight to evidence of the father's prior violence toward the mother because the abuse was not on-going and there was no proof it had affected the father's relationship with the children or his ability to parent. *Id.*

[¶31]   Mother claims the district court erred by not giving any weight to the evidence that, prior to the divorce, Father "drop-kneed" her and held her hostage in her own home.  We cannot fault the district court for omitting those incidents from its final order because Mother did not testify about them at the trial.  She mentioned them at the temporary custody hearing, but, even then, she did not provide any details or show the children were affected.  Moreover, even if we accept these incidents occurred, Mother subsequently agreed Father would have "sole legal and physical custody" of the children.  She apparently believed, despite those incidents, Father was fit to have custody of the children on alternating weeks and to care for them while she worked during her weeks of custody.

[¶32]   The other alleged incidents of violence occurred after the divorce.  The district court addressed Mother's allegations of coerced sex and Father's uninvited entry to her apartment and bed:

> [Mother] testified that [Father] attempted to have sex with her after the divorce, apparently against her will, though it wasn't clear that any sex was consummated.  [Father] denied any attempt to have sex with [Mother] after the divorce.  In any event, [Mother] did not report any such activity to law enforcement. . . . The only incident [of violence] was pre-divorce [i.e, the black eye] and no testimony indicated that that isolated and remote incident had or has had any effect on the children.

[¶33]   Mother claims the district court erred as a matter of law by ruling that coerced sex is not abuse.  We do not interpret the district court's decision that way.  We read it as finding there was insufficient evidence the events took place.  The district court's statement indicates the only alleged violence established by the evidence was the pre-divorce black eye incident.  Although Mother testified Father would not leave her apartment until she had sex with him, she did not expressly testify any sexual activity occurred.  She also did not testify that sex occurred when he entered her apartment and laid down next to her on the bed.  As the district court noted, Mother did not report the incidents to law enforcement, and she did not provide any other evidence to corroborate her claims.  Father unequivocally denied either incident occurred.  Giving the evidence all reasonable inferences favorable to Father, the record does not support a finding that Father coerced, or attempted to coerce, sex from Mother.

[¶34]   The final two incidents of Father's alleged violence toward Mother were a loud and angry confrontation about an injury to one of the children where Mother feared Father

11

would punch her and an instance when he pushed her during an exchange of the children. Mother only testified about the push incident at the temporary custody hearing, so we cannot fault the district court for not addressing it in its order after the modification trial. Moreover, although Mother stated the children were present for these incidents, she did not testify to observing anything "about the children that would cause [her] to believe they were frightened . . . ." Under these circumstances, we cannot say the district court abused its discretion by failing to give any consideration to these incidents in its decision.

[¶35] While we certainly do not condone any amount of spousal abuse by Father, Mother did not present sufficient evidence of on-going abuse or connect any of the alleged incidents to Father's fitness as a parent. The district court did not abuse its discretion by declining to base its custody and visitation decision on Mother's evidence of spousal abuse.

### b. Expert Testimony

[¶36] Mother claims the district court erred by failing to give adequate weight to Ms. Halter's expert testimony. The district court analyzed Ms. Halter's testimony about Father's confrontational tendencies and the potential ill effects of "combative parenting" on the children in evaluating the parties' relative competency and fitness as parents under § 20-2-201(a)(iii). The court elected to discount Ms. Halter's testimony because she

> did not interview or provide treatment for [Father] or the children. No evidence presented made the connection in this case that any alleged confrontational or violent tendencies at work transferred to the home, particularly since the time the divorce was entered. The only incident was pre-divorce [(i.e., the black eye)] and no testimony indicated that that isolated and remote incident had or has had any effect on the children.

The court also noted Ms. Halter "admitted she had no knowledge regarding how [Father] parented his children."

[¶37] "The district court had the duty to weigh the evidence, including any expert testimony, and determine the credibility of the witnesses' statements and opinions." *Bishop,* ¶ 28, 404 P.3d at 1178 (citing *Semler v. Semler*, 924 P.2d 422, 423-24 (Wyo. 1996) (upholding the district court's custody decision rejecting expert opinion the children had been sexually abused)). The district court's explanation demonstrates it gave Ms. Halter's opinion little weight because she had no personal knowledge of the parent-child relationship between Father and the children. Moreover, Mother presented no evidence the children had exhibited any signs of the negative consequences associated with having a "combative parent," such as anxiety, depression, attachment disorders, or problems with decision-making skills at school or how they felt about themselves. Thus, Ms. Halter's

testimony did not help the court "to understand the evidence or to determine a fact in issue." Wyoming Rule of Evidence (W.R.E.) 702(a).

### c. **Legal Custody**

[¶38]  Mother frames this issue as:  "The [d]istrict [c]ourt erred by granting Father sole legal custody without any basis for doing so and when the original order indicated that it was intended by the parties to be a temporary situation because 'Mother is just starting out in her own.  Just for safe measures.'"  We will begin with the second part of the issue statement.  Mother's assertion the parties intended the divorce decree to be temporary is, for several reasons, frivolous.  First, Mother fails to explain how the nature of the original decree as temporary, if it was, had any impact on the outcome of the parties' motions for modification.  Second, Mother does not provide any support for her position that the decree was temporary.  In fact, her only mention of the argument is in the statement of the issue we just quoted.  We do not consider issues unsupported by cogent argument or citation to pertinent authority.  *Hodson v. Sturgeon,* 2017 WY 150, ¶ 6, 406 P.3d 1264, 1265 (Wyo. 2017).  Third, the plain language of the decree does not, in any way, indicate the custody order was temporary.  The statement about Mother "just starting out" was in response to a question on the pro se form about the reason the parties were selecting sole custody with Father.  It was not a condition of the custody order.  Finally, if the decree had only established custody for an unknown, temporary period it would have been erroneous.  A probationary or open-ended provision in a divorce decree is improper because it undermines the children's stability.  *See, e.g., Womack,* ¶¶ 13-16, 413 P.3d at 134-35 (district court abused its discretion by entering a temporary custody order rather than a final decree after the trial on the modification petition); *Buttle,* ¶ 42, 196 P.3d at 184 (disapproving of a divorce decree that left open the question of where the child would live once he reached school age).

[¶39]  In the first portion of her issue statement, Mother claims the district court erred by granting Father sole legal custody of the children without any basis for doing so.  However, she fails to provide any useful definition of "legal" custody.  Section 20-2-201(d) sets out the statutory forms of child custody, which "may include any combination of joint, shared or sole custody."  The dissolution of marriage statutes in Title 20, Article 2, do not mention, much less define, "legal custody."  *See* Wyo. Stat. Ann. §§ 20-2-201 through 205 (LexisNexis 2021).  The statutes simply require the court to consider at least the factors listed in § 20-2-201(a) and make a custody decision that is "most expedient and in the best interests of the children."  As indicated above, the trial court adequately based its decision on the statutory factors.

[¶40]  Moreover, Mother does not direct us to any evidence or argument she presented in the district court related to the "legal custody" issue.  We do not consider arguments unsupported by cogent argument or citation to pertinent authority, nor do we consider

arguments not raised below. *Hodson,* ¶ 6, 406 P.3d at 1265. We, therefore, decline to further address this claim.

### d. **Alcohol Restriction**

[¶41] Mother contests the provision of the custody order which prohibits her from consuming alcohol during visitation with the children. The district court ordered:

> [Mother] shall not consume alcohol when the children are in her custody nor shall she allow others to consume alcohol in the children's presence. [Father] shall not consume alcohol in excess when the children are in his custody, nor allow others to do so in the presence of the children.

[¶42] "[A] parent's alcohol use implicates § 20-2-201(a)(iii) (the relative competency and fitness of the parent) and (a)(ix) (the mental ability of the parent to care for the children). Consequently, courts routinely limit parents' use of alcohol while they are with their children." *Kidd v. Jacobson,* 2020 WY 64, ¶ 18, 463 P.3d 795, 799 (Wyo. 2020). *See also, Womack,* ¶ 7, 413 P.3d at 132 (mother was ordered not to consume any alcohol when the children were in her custody); *Levene v. Levene,* 2014 WY 161, ¶ 7, 340 P.3d 270, 272 (Wyo. 2014) (mother was required to remain sober to retain her right to unsupervised visitation with the children).

[¶43] The district court first addressed Mother's alcohol use in its oral ruling at the end of the temporary custody hearing. It directed "there [would] be no alcohol consumption" during Mother's visitation with the children. Although the provision apparently did not make it into either of the temporary custody orders which are included in the record on appeal, Mother's testimony at trial indicated she knew she was not to have alcohol while the children were in her custody. We have already determined the district court's temporary custody ruling was supported by sufficient evidence.

[¶44] The court expressly incorporated the alcohol prohibition in its final custody and visitation order. It recognized that Mother presented evidence showing she had significantly reduced her alcohol consumption and time spent at the bar since the temporary orders, although she had not totally ceased those activities. The district court credited her reduction in alcohol use as helping her obtain and maintain a more stable living environment for the children.

[¶45] Mother claims the district court abused its discretion by prohibiting her from using alcohol while she has custody of the children but allowing Father to drink around the children, just not to excess. She argues *Mecartney v. Mecartney,* 2021 WY 141, 501 P.3d 197 (Wyo. 2021), supports her position. There, we found the district court abused its discretion when it required the father to regularly undergo alcohol testing as a condition of

his visitation with the child. We noted the "uncontested evidence demonstrated [the] [f]ather's use of alcohol ended thirty years before trial." *Id.,* ¶ 38, 501 P.3d at 207-08. Mother's situation clearly is not comparable to the father's in *Mecartney*. She was still using alcohol to some extent, and her problems with alcohol use had previously impaired her ability to provide a stable home for the children. The district court recognized that Mother's situation improved when she was not using alcohol around the children. Mother points to no evidence showing alcohol use had any effect on Father or his relationship with the children. The district court properly exercised its discretion when it conditioned Mother's visitation on her continued abstinence from alcohol around the children, while allowing Father moderate use of alcohol.

### 3. W.R.A.P. 10.05 Sanctions

[¶46] Father requests that we order Mother to pay his attorney fees under W.R.A.P. 10.05(b) because "there was no reasonable cause for the appeal." "'[W]e [may also] award sanctions when the appellant's brief lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.'" *Wood v. Wood,* 2018 WY 93, ¶ 9, 424 P.3d 247, 249 (Wyo. 2018) (quoting *Golden v. Guion*, 2016 WY 54, ¶ 32, 375 P.3d 719, 727 (Wyo. 2016)) (other citations omitted). However, Rule 10.05 sanctions generally are not available when the appellant challenges the district court's discretionary rulings. *Lemus v. Martinez,* 2021 WY 66, ¶ 40, 486 P.3d 1000, 1012 (Wyo. 2021). *See also, Fleet v. Guyette,* 2020 WY 78, ¶ 66, 466 P.3d 812, 828 (Wyo. 2020) ("Rule 10.05 sanctions are generally not available for challenges to discretionary rulings, unless an appeal lacks cogent argument, there is an absence of pertinent legal authority to support the issues, or there is a failure to adequately cite to the record.") (citations and some quotation marks omitted).

[¶47] Mother challenges the district court's discretionary decisions regarding spousal abuse, expert testimony, and use of alcohol. As our discussion of those issues illustrates, litigants regularly raise similar challenges to discretionary rulings on appeal. Although Mother's brief is marginal, at best, we deny Father's request for sanctions.

### CONCLUSION

[¶48] The district court did not err by awarding primary physical and sole legal custody of the parties' two children to Father. It properly exercised its discretion by refusing to base its custody decision on Mother's spousal abuse evidence, giving little weight to her expert's testimony, retaining Father's sole legal custodian status, and restricting Mother's alcohol use around the children. Father is not entitled to an award of attorney fees under W.R.A.P. 10.05.

[¶49] Affirmed.